## The G., C. & S. F. R'y Co. v. I. T. Levy.

(Case No. 4896.)

1. CONTRACT ON SUNDAY.—A contract made on Sunday to secure decent burial for the dead and to procure the presence of parents of the deceased is, in contemplation of law, a contract to do a work of necessity and charity, and therefore valid; following Doyle *v.* Lynn, 118 Mass., 197.

2. DAMAGES.— The tendency of decisions by courts in states where technical forms of action have been discarded, is to apply the same rule for the measure of damages in cases based upon contract, which are attended with circumstances of aggravation, that is applied in actions founded in tort solely.

3. SAME.— A railway company which owned and operated for hire a telegraph line received a message on Sunday to be transmitted to one living at a place where it maintained a telegraph office on its line. The message announced the death of the sender's wife and child, and was directed to his father, requesting his presence. *Held*, that the sender was entitled to recover against the company, over and above such sum as he paid for the transmission of the message, if there was wilful or gross negligence in failing to deliver the message, such an amount of exemplary damages as a jury might award under proper instructions. When nominal damage is shown in such a case, it is for the jury to measure the exemplary damage, whose verdict, if excessive, would be set aside.

4. DISTINGUISHED.— This case distinguished from So Relle v. W. U. Tel. Co., 55 Tex., 309. There the action was by him who received the message, and who showed no nominal or special damage; here the plaintiff was the sender, with whom the contract for its delivery existed, and whose right to recover nominal damage was shown.

5. DAMAGES.— A telegraph company which is guilty of gross negligence or total failure in delivering a message of a strictly private nature, announcing the death of a relative of the sender, and desiring aid and the like, cannot escape with more nominal damages on account of the want of strict commercial value in the message.

6. PRACTICE — EVIDENCE.— Though evidence improperly admitted, which was calculated to arouse the feelings of the jury against the party opposing him who offered it, may afterwards be withdrawn and the jury told not to regard it, its impression is not easily effaced or its influence calculated, and it is ground for reversal.

7. PRACTICE.— The practice of admitting improper testimony with the promise or expectation of afterwards directing the jury not to consider it, or of controlling its effect by a charge, is one not to be encouraged. Impressions once made are not easily effaced; and when such testimony results in rousing the sympathies or prejudice, it is apt to influence the finding, notwithstanding a charge to disregard it.

APPEAL from Milam.. Tried below before the Hon. W. E. Collard.

*Ballinger & Mott*, for appellant, that the contract made on Sunday was illegal, cited Texas Penal Code, art. 183; Parsons on Contracts, vol. 2, star pp. 646 and 762, and note *n;* Addison on Contracts, vol. 1, p. 381; Thilock v. Webb, 56 Me., 100; Pate v. Wright, 30 Ind., 476; Stewart v. Davis, 31 Ark., 518.

That exemplary damages cannot be recovered for mental suffering caused by gross negligence in the breach of a contract, cited Greenl. Ev., vol. 2, sec. 267 and note 2; Sedg. on Dam., vol. 1 (7th ed.), p. 24 and note *a;* Scott & Jarnagin on Telegraphs, secs. 417, 418; Wilson v. Young, 31 Wis., 574; Johnson v. Wells, Fargo & Co., 6 Nev., 224; Curtis v. R. & S. R. R. Co., 18 N. Y., 534;

Walsh v. C., M. & St. P. R'y Co., 42 Wis., 23; Brown v. C., M. & St. P. R'y Co., Wis. Leg. News, February 2, 1882; Joch v. Dunkwardt, 85 Ill., 331; Hamlin v. G. N. R'y Co., 1 H. & N., 408–411; Hobbs v. L. & S. W. R'y Co., 10 Law Rep. (Q. B.), 111; Blake v. Midland R'y Co., 18 Q. B., 93; 10 Eng. L. & Eq., 437; Field on Damages, 630; Wharton on Negligence, sec. 756; Thompson on Negligence, vol. 2, 837; Shearman & Redf. on Negligence, 557.

*Henderson & Henderson* and *Maxey & Fisher*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— The cause of action set out in the brief of appellant is as follows:

"The plaintiff alleged that appellant owned and operated a telegraph line from the town of Cameron, in Milam county, to the town of Cleburne, in Johnson county, transmitting telegrams for hire. That on September 30, 1882, appellee's wife, Bettie Levy, died, and his infant child died the day before near said town of Cleburne. That appellee, being in straitened circumstances, among strangers, and in need of pecuniary assistance about the funeral obsequies and burial of his wife, and desirous of removing the corpse of his wife to Milam county for interment, and being in great distress and requiring and desirous of the help, consolation and assistance of his father, I. Levy, then residing at said town of Cameron, and also being desirous of the help, comfort, consolation and assistance of Mrs. Catherine A. Dean, the mother of his wife, who also resided at said town of Cameron, delivered to appellant, about ten o'clock, A. M., of October 1, 1882, a telegram, paying the charges thereon, and informing appellant of the necessity for a prompt transmission and delivery of the same, and that appellant undertook to deliver the same in a reasonable time. The following is a copy of said telegram:

"'CLEBURNE, October 1, 1882.

"'To I. Levy, Cameron, Texas: — Bettie and baby dead. Come to Cleburne to-night train to my help. Wade meet you. Tell her mother.          (Signed)          J. T. Levy.'

"That notwithstanding appellant's undertaking to deliver said telegram in a reasonable time, appellant wilfully, and by its carelessness and negligence, failed to deliver the same within a reasonable time, and did not deliver the same until about eleven o'clock, A. M., of October 2, 1882. That October 1, 1882, the day on which the telegram was delivered to appellant, was Sunday, but that the transmission and delivery of the same was a work of necessity and

charity.   That appellee kept the body of his wife disinterred, await-
ing the arrival of said I. Levy, and expecting, also, the arrival of
the mother of his wife, until about ten o'clock, A. M., on the 2d day
of October, 1882, when his father, I. Levy, failing to arrive, and
failing to hear from him, and it being impossible to keep the body
of his wife longer out of the grave, he had her buried.   That if
appellant had delivered said telegram to appellee's father, I. Levy,
he would have come to his relief and would have rendered him
needed pecuniary assistance, and that he and his said wife's mother
would have been present at the funeral obsequies and burial of his
wife, and would have comforted and consoled him on that sad occa-
sion.   That on account of the absence of appellee's father and his
wife's mother he was compelled to put the body of said wife away
among strangers and to bear his heavy affliction alone, without the
comfort and consolation of any relative or friend.   That appellee
incurred heavy expense in keeping the corpse of his wife out of the
grave awaiting the arrival of his father and wife's mother, and that
he was almost out of funds and had to make sacrifice of the little
property he had in order to pay the expenses incurred and to avoid
the importunity of his creditors.   That on the failure of his father
to answer said telegram, or to come to his relief, he was greatly dis-
tressed and mystified; that injury inflicted on the feelings of the
appellee was painful in the extreme, and that he was damaged in
the sum of $50,000."

The petition further alleged that the telegram was received at the
office of the appellant at Cameron about ten minutes after ten
o'clock, A. M., on the 1st of October, 1882, and that the train passed
Cameron on its way to Cleburne after two o'clock, P. M., on that
day, and arrived at Cleburne on the night of the same day, and that
if ordinary diligence had been used in the delivery of the telegram,
the father of the appellee would have gone to his assistance on that
train.

It appears that the father was a merchant residing in the town of
Cameron, whose residence, about six hundred yards from the tele-
graph office, if not known, might easily have been ascertained, and
that upon the receipt of the telegram at Cameron it was sent out
three times during the day by a messenger boy, who went to the
father's place of business to deliver it, but not to his residence, and
not thus finding him, although he was at his residence the greater
part of the day, the dispatch was not delivered until about ten
o'clock, P. M., on the next day.

It does not appear that the person who delivered the message to

the messenger boy advised him of the necessity for prompt delivery of the same. The facts alleged in the petition were in the main: proved.

It is urged that the court erred in overruling the exceptions filed' to the petition. There are only two questions raised by the demur-rers deemed necessary to particularly consider in disposing of the case, the others being clearly untenable.

It is claimed that the contract to send the message was illegal because made and to be executed on Sunday. There was no error in this respect. The petition and evidence show a case in which the acts which appellant contracted to perform were necessary to secure decent burial to the deceased wife of the appellee, and the presence of parents. The court might and ought to have instructed the jury that the contract to do things necessary to such an end was a contract to do a work of necessity and of charity, and therefore valid. Doyle v. Lynn, etc., 118 Mass., 197.

It is urged that neither the petition nor evidence shows such facts. as can be made the basis for damage. In cases of this character, there is frequently great difficulty in determining whether they are to be limited to such measure of damages as are usually allowed in cases for breach of contract, or whether, in addition to such measure, circumstances of aggravation may be shown, and the larger measure of damages, recognized as proper in cases of torts, applied; or whether such cases, though to some extent based upon contract, may not be considered as essentially founded on tort.

Actions such as this are not based solely upon breach of contract,. and hence to be considered in the determination of the measure of damages by the rules applicable to a breach of contract to sell and deliver property, or to do certain acts in reference to property, but. the rules applicable to such contracts, in so far as applicable, may be looked to; as where a contract has been made under special circum-stances, which are known to the contracting parties, and from which, in the nature of things, special damage will result if the contract is not performed. There the parties are to be presumed to have con-tracted with reference to such circumstances and the damage which will naturally flow from a non-performance of such contract; and in such case, where the element of wrong, oppression or wilful neglect enters into the breach of the contract, any damage, either actual or exemplary, which the law authorizes to be recovered, ought to be held to have been contemplated by the parties, and therefore recov-erable, unless technical rules of procedure or evidence prevent it. In this state we have no forms of action, and a plaintiff may state all

the facts upon which he relies for a recovery, if they be so connected that out of the same transaction one injury results; the extent of the injury and right to increased damages being affected by all the attendant facts.

The reasons which have been given by courts which recognize forms of action, why, even in transactions based upon contract, any circumstances of aggravation by which the wrong is intensified may not be set up and a recovery had thereon as in cases purely in tort, lose much of their force in courts where no technical forms of action are recognized.

The tendency of the decisions in courts where technical forms of action have been discarded is to apply the same rule for the measure of damages in cases based upon contract, which are attended with circumstances of aggravation, as is applied in actions grounded in tort solely.

Referring to this question Mr. Field says: "We have noticed the extent to which the courts have gone in considering *motives* on breaches of contracts, and there would seem to be a tendency to allow an inquiry into the motives generally in such cases. And when the question is freed from the technical and formal objections we have referred to, there can be no sound reason why a plaintiff may not recover as ample damages for a wilful breach of contract as for a wilful tort." Field on Damages, 64, 59–63.

Mr. Sedgwick, speaking upon the same subject, after having stated the rule where forms of action are recognized, with the attendant rules of pleading and evidence, says: "I am far from desiring to express an opinion in favor of the doctrine of the text; on the contrary, if the plaintiff in an Anglo-Saxon court of justice shall ever be permitted to state his complaint according to the actual facts, and not be compelled to use an unmeaning formula, I can see no reason, greatly as legal relief would be thus extended, why exemplary damages should not be given for a fraudulent or malicious breach of contract as well as for any other wilful wrong. Damages are given by the civil law in many cases of this kind. So they are in Louisiana, the jurisprudence of which state is very much fashioned on the great Roman original." 1 Sedgwick on the Measure of Damages, 445, note 1. The following cases bear upon the same subject: Jones *v.* Steamship Cortez, 17 Cal., 487; Heirn *v.* McCaughan, 32 Miss., 37; New Orleans, Jackson & Great Northern R. R. Co. *v.* Hurst, 36 Miss., 667; Wharton on Negligence, 435.

In the case of N. O., J. & G. N. R. R. Co. *v.* Hurst, above referred to, it appeared that Hurst had paid the price for transportation upon

---

---

the railway as a passenger from New Orleans to Quin's Depot, and that, contrary to his wish, he was carried beyond the station, and there directed to leave the cars, which he did. He stated all the facts attending the transaction and recovered more than compensatory damages. In discussing the measure of relief to which the party was entitled, the court said: "It is insisted, however, that in this case the declaration is based on an alleged breach of contract; that no special damages are laid in the declaration, and none were proven on the trial; but, on the contrary, the defendant in error himself stated and admitted that he had sustained no pecuniary injury by the act complained of. Under our system of pleading the *formal* distinctions between actions are abolished, and the declaration states the *facts* which constitute the cause of action plainly, distinctly and substantially. In determining, therefore, the character of the action, we look to the substance of the whole statement, and not to the mere formal language in which it is expressed. We have regard to the *facts* constituting the cause of complaint, and afford the plaintiff the most ample redress and relief which the *facts* will justify consistent with a due regard to the rights of the defendant. It is the policy of our system to trammel the rights of the parties as little as possible by the technicalities of mere form, but so to shape the pleadings as to bring before the jury the very right of the matter in issue between them without unnecessary delay or expense. Hence, when the *facts* are plainly and distinctly stated, the action will be regarded as either *in tort* or contract; having regard, first, to the character of the remedy such *facts* indicate, and second, to the most complete and ample redress which, upon the facts stated, the law can afford. . . . And in cases of this character (against common carriers), the courts are inclined to consider it as founded *in tort* unless a special contract very clearly appear to be made the gravamen and object of the complaint in the declaration. . . . The contract is stated as inducement to the action, as the foundation of defendant's right to be on the cars, to show that defendant in error was lawfully there."

The same principles are believed to be recognized in the following cases: Graham *v.* Roder, 5 Tex., 149; Neill *v.* Newton, 24 Tex., 204; Pridgen *v.* Strickland, 8 Tex., 433; H. & T. C. R. R. Co. *v.* Shirley, 54 Tex., 148. In some other parts of the opinion in that case, language is used which may seem to be in conflict with the views here expressed; but when considered with reference to the facts of that case they are not believed to be so.

Telegraph companies exercise a public employment, which imposes

upon them duties to the public, which give to every person the right to have their services in the transmission of proper messages, upon payment of the requisite consideration; and this public duty creates an obligation honestly and faithfully to perform that duty, whenever it is fixed in a given case.

The purpose of a contract, express or implied, in reference to anything falling within the line of that duty, is to make it obligatory in the given case, rather than to create the duty or fix the measure of damages in case of its non-performance.

Such duties do not stand solely upon special contract, as do duties which arise between individuals who owe no duty to each other, nor to the public, in reference to the subject matter of contract.

The principle applicable to this class of cases is thus well stated by Mr. Cooley in his work upon Torts, 91: "There are also, in certain relations, duties imposed by law, a failure to perform which is regarded as a tort, though the relations themselves may be formed by contract covering the same ground. The case of the common carrier furnishes us with a conspicuous illustration. The law requires him to carry, with impartiality and safety, for those who offer. If he fails to do so, he is chargeable with a tort. But when goods are delivered to him for carriage, there is also a contract, expressed or by operation of law, that he will carry with impartiality and safety; and if he fails in this, there is a breach of contract. Thus, for the breach of the general duty, imposed by law because of the relation, one form of action may be brought, and for the breach of contract another form of action may be brought."

The rule is thus tersely stated by Jarvis, C. J., in the case of Courtmay v. Earle, 10 Common Bench, 83: "Where there is an employment, which employment itself creates a duty, an action on the case will lie for a breach of that duty, although it may consist in doing something contrary to an agreement made in the course of such employment by the party upon whom the duty is cast."

Practically the same ruling was made in the cases of Govett v. Radnidge et al., 3 East, 62; Heirn v. McCaughan, 32 Miss., 37, and N. O., J. & G. N. R. R. Co. v. Hurst, 36 Miss., 665.

Upon the whole case, as made by the petition and evidence, we are of the opinion that the appellee was entitled to recover whatever damage the proof may justify, over and above such sum as he paid for the transmission of the message; and this in the way of exemplary damages, if the negligence of the appellant, in failing to deliver the message, was wilful or gross, which is a matter to be determined by a jury, under proper instructions; and as to the suffi-

ciency of the evidence to establish such negligence, we refrain from comment, as the judgment will have to be reversed for matters hereafter to be considered.

The difficulty of measuring the damages to the feelings of the appellee, he showing at least nominal damages, without which he would not be authorized in this character of suit to recover exemplary damages, is felt to be very great; but the duty of determining that question is one which must, if so demanded, be confided to a jury, whose verdict may be set aside if excessive.

Nominal damages, at least, being shown in this cause, which enables the appellee to maintain the suit, we are of the opinion, as expressed by elementary writers who have given much thought to questions of this character, that " In cases of delay or total failure of delivery of messages relating to matters not connected with business, such as personal or domestic matters, we do not think that the company in fault ought to escape with mere nominal damages on account of the want of strict commercial value in such messages. Delay in the announcement of a death, an arrival, the straying or recovery of a child, and the like, may often be productive of an injury to the feelings which cannot easily be estimated in money, but for which a jury should be at liberty to award fair damages. Yet, in such cases, the damage ought not to be enhanced by evidence of any circumstance which could not reasonably have been anticipated as probable from the language of the written message." Shearman & Redfield on Negligence, 605. Otherwise, in a large class of cases, most grievous wrongs may be inflicted in matters as vitally affecting the welfare of individuals as in other matters to which a pecuniary value, a market price, can be fixed; and this in disregard of a duty voluntarily assumed to the public, to secure the due performance of which many privileges not possessed by persons generally are conferred by the state upon the offending party.

During the trial the court permitted the appellee to testify as follows:

" I was there (in Johnson county) among strangers, and without friends and money. I had to mortgage my team to get a burial case; my creditors were crowding me for money and I had to sacrifice my property to satisfy them. I owed Quilitches $27 for staying with him while my wife was sick, from Thursday until Monday; he followed me to Cleburne and "dunned" me until I let him have my harness, and I was very much distressed by reason of my financial condition." To which the appellant objected, on the grounds that it was improper and irrelevant evidence, and that it

was liable to unduly arouse the sympathy of the jury and mislead them.

The next morning, while the witness was still on the stand, the counsel for plaintiff stated that on consultation they had concluded to ask the court to sustain the objections of the defendant to the above evidence, or to allow plaintiff to withdraw said testimony from the jury, and thereupon the court allowed plaintiff to withdraw the evidence and struck out said testimony, and informed the jury that they would not consider same in making up their verdict; defendant at the time contending that it had been damaged in the minds of the jury by this evidence, and that it had been considered by the jury, and that it could not be withdrawn from them so as not to affect them in making up their verdict, and still asked that it be allowed its bill of exceptions.

The admission of this testimony is assigned as error. This evidence should not have been admitted; for the financial condition of the appellee, which created the necessity for mortgaging or selling his property, was not the natural result of appellant's failure to deliver promptly the message; in fact, the mortgage seems to have been made before he could have had a reasonable expectation of even hearing from his father. The evidence was of a character calculated to arouse the sympathies of the jury in his favor, and their indignation against the appellant; and, besides, to furnish the jury with an improper basis for damages.

The question is: Was the admission of the testimony, although the jury were subsequently directed to disregard it, such error as requires a reversal of the judgment?

It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of the opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors in favor of the party who offers it, and to arouse the feelings of the jury against the opposite party, is erroneously permitted to go before the jury, it is proper ground for reversal. Graham & Waterman on New Trials, 612–630.

The testimony objected to was that of the appellee himself, and in its nature well calculated to produce upon the minds of the jury an impression and sympathy in his favor, as well as an erroneous view as to the proper elements of damage; and however conscientious a juror may be, and however hard he may seek to efface the impression made by it, he is still likely unconsciously to permit it to influence his verdict.

The practice of admitting improper evidence, with the promise or expectation of subsequently directing the jury not to consider it, or of controlling it by the charge, is not to be encouraged; for upon minds misdirected in legal investigations, and excited by sympathy aroused by recitals of apparent hardship, such directions or instructions will usually be found impotent to efface impressions once made.

For this error of the court the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 5, 1883.]