\* WADSWORTH *v.* WESTERN UNION TELEGRAPH COMPANY.

(*Jackson.*    May 29th, 1888.)

1. TELEGRAPH COMPANIES.    *Negligence in transmission of messages.    Receiver's right of action.*

   The party to whom a telegram, intended for his personal benefit, is addressed, has a right of action for damages against the telegraph company for negligent delay in its transmission and delivery.

   Code cited: § 1542 (M. & V.); § 1323 (T. & S.).

2. SAME.    *Same.    Measure of damages.    Case in judgment.*

   Where telegraphic messages addressed to a sister, informing her of the serious illness, and later of the death, of her brother, were negligently delayed in their transmission and delivery, so that the sister was denied the opportunity of attending on her brother in his last sickness, and making necessary preparations for his funeral, she has a clear right to recover of the company *some* damages for its breach of duty and contract; and may, in such case, recover, in addition, such further sum as will reasonably compensate for the grief, disappointment, or other injury to her feelings, occasioned by such default of the company.

   Cases cited: 59 Texas, 563 (46 Am. Rep., 278); 55 Texas, 303 (40 Am. Rep., 805); 66 Texas, 580 (59 Am. Rep., 623).

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County.    L. H. ESTES, J.

\* In the leading case of Marr *v.* Western Union Telegraph Company, reported on page 530 of 1st Pickle's Reports, the name of the attorney who appeared for the plaintiff was incorrectly printed as *T. C. Murray,* when it should have been F. C. MAURY.—REPORTER.

JOHN D. MARTIN for Wadsworth.

TURLEY & WRIGHT for Telegraph Company.

CALDWELL, J. This suit was brought in the Circuit Court at Memphis by Mrs. Jennie H. Wadsworth and her husband, T. J. Wadsworth, against the Western Union Telegraph Company for failing to promptly deliver to her the following telegraphic messages:

"MEMPHIS, October 2d, 1887.
"*To Mrs. T. J. Wadsworth, Byhalia, Miss.:*
"Your brother, Billie Howell, is in a dying condition at 105 Jefferson Street.
"R. C. WALDEN."
And

"MEMPHIS, October 3d, 1887.
"*To Mrs. T. J. Wadsworth, Byhalia, Miss.:*
"Mr. Howell died this morning. Advise us what to do. Will look for some one on morning train.
"R. C. WALDEN."

It is averred in the declaration that Byhalia is about twenty-eight miles from Memphis, and that the two places are connected by direct line of telegraphic wire and railroad; that Billie Howell, a brother of Mrs. Wadsworth, one of the plaintiff's was "seized with a mortal malady" in the city of Memphis on the 2d day of October, 1887, and that at about the hour of 7 o'clock P. M. of

that day R. C. Walden, "a friend of the family," presented to the defendant the former of the messages just set out, written upon one of its day or full-rate blanks, and that it was accepted by the defendant for immediate transmission and delivery to her; that through the gross, wanton, and reckless negligence of the defendant, and in palpable violation of its duty, the message was by the defendant detained and not delivered until about 11:30 o'clock A. M. of the next day, and several hours after the death of Howell; that he died about 6:30 o'clock A. M. on the 3d of October, 1887, and a few moments thereafter the second of said telegrams was presented and accepted for immediate transmission and delivery, as was the other one, and that through the same gross, wanton, and reckless negligence of the defendant this second message was detained and not delivered by the defendant until about the same time the other one was delivered; that by reason of this negligence and breach of duty on the part of the defendant Mrs. Wadsworth was prevented from attending her dying brother and ministering to him in his last hours, and also from making desired preparations for his interment; that the messages were sent at her expense, and that she paid full toll therefor— "to her damage ten thousand dollars."

Demurrer was sustained, and the suit dismissed. Plaintiffs have appealed in error.

The first assignment of demurrer is that the declaration shows no cause of action, in that it

avers no pecuniary damage or personal injury; that mental suffering, unaccompanied by pecuniary injury, will not sustain an action.

Clearly the declaration discloses a case for some damage; and to this extent, it must be conceded, the action in sustaining the demurrer was erroneous.

The messages in question were couched in decent language, and were lawful in their purposes. Such being true, Walden had a legal right to send them, and Mrs. Wadsworth a legal right to receive them; and it was the plain duty of the defendant to deliver them promptly. Its dereliction of duty and violation of her legal right, as averred in the declaration and confessed in the demurrer, unquestionably gave her a right of action. "Every infraction of a legal right, in contemplation of law, causes injury. This is practically and legally an incontrovertible proposition. If the infraction is established, the conclusion of damages inevitably follows." 1 Suth. on Damages, p. 2.

But the question most debated at the bar by learned counsel, and the one of most importance and interest in this case, is whether or not injury to the feelings, anguish, and pain of mind, occasioned by the defendant's breach of duty to Mrs. Wadsworth, can be regarded as an element of damage under the law.

In actions for personal injury the general rule —which is too familiar to admit of citations of

authority to sustain it—is that both bodily pain and mental suffering connected therewith are to be considered by the jury in estimating the amount of damage sustained and the sum to be recovered by the plaintiff. Upon the latter element it is very truthfully and appropriately remarked by a learned author that "the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter. Indeed, the sufferings of each frequently, if not usually, act reciprocally on the other." 3 Suth. on Damages, 260.

After laying down the rule as we have stated it to be, and citing some of the very many decisions adopting it, Mr. Wood says:

"But we do not apprehend that the rule has any such force as to enable a person to maintain an action where the only injury is mental suffering, as might be thought from a reading of the loose *dicta* and statements of the Court in some of the cases. So far as I have been able to ascertain the force of the rule, *the mental suffering referred to is that which grows out of the sense of peril or the mental agony at the time of the happening of the accident, and that which is incident to and blended with the bodily pain incident to the injury, and the apprehension and anxiety thereby induced.*" Wood's Mayne on Damages, p. 74, note.

On the same subject Mr. Cooley says:

"But in this country, as well as in England, the ground of the recovery must be something

besides an injury to the feelings and affections or a loss of the pleasure and comfort of the society of the person killed; there must be a loss to the claimant that is capable of being measured by a pecuniary standard." Cooley on Torts, 271.

These are the strongest statements of the rule contended for by the defendant which we have seen; and to them we give our full approval when applied to the class of cases with respect to which they are made. But they are applicable peculiarly, not to say exclusively, to actions for injury to the person, where physical injury is the sole ground of the action, and without which the action will not lie at all.

This, however, is an action on the facts of the case, which is permissible under our Code, and may include all matters embraced in an action *ex delicto*, and also those proper to be considered in an action *ex contractu.*

The plaintiff having a clear right of. action for *some* damage, as we have already seen, may maintain her action and recover *all* the damage she may show herself to have sustained by reason of the wrongful act of the defendant; and in ascertaining the amount thereof all proven elements of damage admissible in either form of action, are for the consideration of the jury.

In an action for tort the injured party may recover such damages as result proximately and naturally from the wrongful act of the defendant, and also exemplary damages where the act was done

with malice, or under circumstances of aggravation; and in an action for a breach of contract the measure of the damages recoverable is, generally, the loss which the contracting parties, with all the facts before them, would have contemplated as flowing directly from its breach. 2 Thompson on Neg., p. 849; Gray's Communications by Telegraph, 146.

The latter author, on the next page, says: "Neither in an action of tort nor in one of contract can a party recover damages for mental anguish alone; he can recover such damages, in consonance with the foregoing rules, *at least only where he is entitled to recover some damage on another ground.*"

There is a large class of actions for tort in which substantial recoveries are authorized and sustained for injury to the feelings of the person suing, when the other damage is nominal merely. As instances of such actions, we mention the case of a husband suing for an injury to his wife, or for seducing or enticing her away from him, and that of a parent suing for the seduction of a daughter. In all these cases the main element of damage, the real injury sustained, is the wound to the feelings—the loss of service upon which the actions are technically based being but a legal fiction, and more imaginary than real. *Love* v. *Masoner,* 6 Bax., 27; *Parker* v. *Meek,* 3 Sneed, 30; *Maginnoy* v. *Soudek,* 5 Sneed, 147; Cooley on Torts, 224, 226, 231; 3 Suth. on Dam., 744.

With respect to actions for breach of contract, Mr. Sutherland asks the question: " May damages for breach of contract include other than pecuniary elements?" and then he proceeds to say: " In actions upon contract the losses sustained do not, by reason of the nature of the transactions which they involve, embrace ordinarily any other than pecuniary elements. There is, however, no reason why other natural and direct injuries might not justify and require compensation. Contracts are not often made for a purpose the defeating or impairing of which can, in a legal sense, inflict a direct and natural injury to the feelings of 'the injured party. A breach of promise of marriage is an instance of such a contract, and such considerations enter into the estimate of the damages. The action for such a cause is often referred to as an exceptional action. In a certain sense it is so; but in the particular action under consideration it is only peculiar. It is an action upon contract, and the damages allowed are such as, considering the nature and benefits of the thing promised, will be adequate compensation." 1 Suth. on Dam., 156, 157.

To further illustrate and answer his question, the same author says: &ast; &ast; " Where a contract is made to secure exemption from a particular inconvenience or annoyance, or to confer a particular enjoyment, the breach, so far as it disappoints in respect to that purpose, may give a right to damages appropriate to the objects of the contract." *Ib.*, 157–8.

These are but illustrations and applications of the general rule, which we have already stated, for the estimation of damages in actions for breach of contract. They serve the purpose of showing that in the ordinary contract only pecuniary benefits are contemplated by the contracting parties, and that therefore the damages resulting from the breach of such a contract must be measured by pecuniary standards; and that where other than pecuniary benefits are contracted for, other than pecuniary standards will be applied in the ascertainment of the damages flowing from the breach.

The case before us (so far as it is an action for breach of contract) is subject to the same general rule, and the defendant is answerable in damages for the breach according to the nature of the contract, and the character and extent of the injury suffered by reason of its non-performance.

The messages were sent for a particular purpose, which was disclosed upon their faces, and of which the defendant had full notice. That purpose was not of a pecuniary nature. There was no offer or instruction to buy or sell any thing— no proposition or promise with respect to any business transaction.

The messages were of far greater importance to the receiver than any of these. Her brother was lying at the point of death in easy reach of her. It was information of this fact that the defendant first undertook to convey to her for a stipulated

sum, and which, if conveyed promptly, would have enabled her to be with him in his last moments, and would have saved her the injury of which she complains.

Then her brother died away from her; his body needed her attention, and would have received it, as averred, if the defendant had done its duty. It was intelligence of the death which the defendant agreed, in the second place, to communicate to her.

The messages were proper in language, and lawful in purpose. She was entitled to the information they contained, and to whatever benefits that information would have conferred upon her, even though such benefits be mainly or altogether to the feelings and affections. The defendant contracted that she should have those benefits, and that she should be spared whatever pain and anguish such information, promptly conveyed, would prevent.

By all the authorities, including our Code, it was the duty of the defendant to transmit and deliver these messages "correctly and without unreasonable delay," and in failing to do so it became responsible for all loss or injury occasioned thereby. Code (M. & V.), §§ 1541, 1542; *Marr v. Telegraph Company*, 1 Pickle, 529; Gray's Com. by Tel., Sections 81, 82, *et seq.*; Cooley on Torts, 646-7; Wharton on Neg., Sec. 767; 3 Suth. on Dam., 298-300; Sher. & Red. on Neg., Sec. 605.

This rule of damages is enforced by the Supreme

Courts of Georgia, Virginia, and other States, even where the message is in cipher. *W. U. Tel. Co.* v. *Fatman*, 73 Ga., 285 (54 Am. Rep., 877); *W. U. Tel. Co.* v. *Reynolds*, 77 Va., 173 (46 Am. Rep., 715), and Reporter's note at end of case.

It is true that most of the adjudged cases, in which telegraph companies have been required to respond in damages for their negligence, have involved questions of pecuniary loss; but we cannot agree that, for that reason, the liability should attach and be enforced in such cases only.

Telegraphy is of comparatively recent origin; and the law concerning the duties and liabilities of telegraph companies has hardly passed its infancy, and cannot be expected, at so early a day in its history, to be settled, even in its important parts, by a long line of concurring decisions.

In addition to this, it is but reasonable to presume that such a flagrant breach of plain obligation with respect to matters so near the heart and so accustomed to the respect of all mankind as is here averred, has but seldom occurred, and, therefore, has but seldom been brought to the attention of the courts of the country.

To hold that the defendant is not liable in this case for the wrong and injury done to the feelings and affections of Mrs. Wadsworth by its default, would be to disregard the purpose of the telegrams altogether, and to violate that rule of law which authorizes a recovery of damages appropriate to the objects of the contract broken; and,

furthermore, such a holding would justify the con-
clusion that the defendant might, with impunity,
have refused to receive and transmit such messages
at all; and that it has the right in the future to
do .as it has done in this case, or, at least, that
it cannot be required to respond in damages for
doing so.

To such a result we think no Court should
submit. The telegraph company is the servant
rather than the master of its patrons. It is their
prerogative to determine what messages they will
present, and so they are lawful it is bound by
law, upon payment of its toll, to transmit and
deliver them correctly and promptly. It has no
right to say what is important and what is not,
what will be profitable to the receiver and what
will not, what has a pecuniary value and what
has not; but its single and plain duty is to make
the transmission and delivery with promptitude and
accuracy. When that is done its responsibility is
ended; when it is omitted through negligence, the
company must answer for all injury resulting,
whether to the feelings or to the purse—one or
both—subject alone to the proviso that the injury
be the natural and. direct consequence of the neg-
ligent act.

Continuing the discussion, and as illustrative of
his position as to the allowance or non-allowance
of a recovery for injury to the feelings, Mr. Wood
says that an action will not lie for "charging a
lady with being a prostitute or a gentleman with

being a scoundrel, a black-leg, a cheat," etc., un-
less the charge be productive of some *special dam-
ages* apart from mental anguish occasioned thereby.
Wood's Mayne on Damages, 75.

This is conceded to be true at common law,
because, as stated by the same author, such of-
fenses are not by the common law crimes in the
legal sense.   But if by statute the making of such
charges be rendered actionable *per se*, and the in-
jured party in that way get a standing in Court,
a recovery may be had for all damages sustained,
including mental suffering.

In this connection, and in addition to what has
already been said with regard to the right of ac-
tion growing out of the defendant's breach of duty,
it is to be observed that we have a statute which
expressly confers the right of action.   Section 1541
of our Code requires telegraph companies to trans-
mit and deliver *all* proper messages " correctly and
without unreasonable delay; " and for a failure to
do so, the defaulting company is, by Section 1542,
declared to be " liable in damages to the party
aggrieved."

The language of each section is general, broad,
and comprehensive.   The act does not discriminate
between messages appertaining to matters pecuni-
ary merely and those having reference to matters
of a domestic nature, as are those now before us.
On the contrary, all must be transmitted and de-
livered alike.   The obligation upon the company
is the same in the one class of cases as in the

other; and if default occur, the remedy is the same for one person that it is for another person.

There is no discrimination with respect to the nature of the messages to be conveyed, nor is there any discrimination with respect to the nature of the damages to be recovered for the company's default. One section imposes a general duty, and the other gives a universal right of action for the breach of that duty. And of necessity the nature and amount of damages recoverable in each particular case are to be determined by the character of the message and the extent of the injury caused by the defendant's default.

It is true that the "officer or agent" of the company who willfully violates any of the provisions of Section 1541 is, by Section 1542, declared to be "guilty of a misdemeanor," but that does not take the place of or diminish the civil liability. Both remedies are expressly given, and neither is exclusive or in lieu of the other. The offending officer or agent is guilty of a misdemeanor, and he and the company are "*also* liable in damages to the aggrieved party."

The question with respect to the measure of damages in a case like this, though not of frequent occurrence heretofore, is not entirely new; nor is the view we have expressed without express authority to sustain it.

Sherman & Redfield say:

"In case of delay or total failure of delivery of messages relating to matters not connected

with business, such as personal or domestic matters, we do not think that the company in fault ought to escape with mere nominal damages on account of the want of strict commercial value, in such messages. *Delay in the announcement of a death, an arrival, the straying of a child, and the like, may often be productive of an injury to the feelings which cannot easily be estimated in money, but for which a jury should be at liberty to award fair damages.* Yet in such cases the damages should not be enhanced by evidence of any circumstances which could not reasonably have been anticipated as probable from the language of the written message." Sher. & Red. on Neg., Sec. 605, p. 662.

To the same effect are the following cases: *So Relle* v. *W. U. Tel. Co.*, 55 Texas, 303 (40 Am. R., 805); *G., C. & Santa Fe R'y Co.* v. *J. T. Levy*, 59 Texas, 542 (46 Am. R., 269); *Stuart* v. *W. U. Tel. Co.*, 66 Texas, 58) (59 Am. R., 623).

In the first of these cases the telegraph company was held to be liable to So Relle for injury to his feelings, caused by its failure to promptly transmit and deliver to him a telegram announcing the death of his mother, whereby he was prevented from attending her funeral.

Levy's case is properly reported in the headnote, which is as follows: .

"The plaintiff delivered to the defendant, a railway company operating a telegraph, a message on Sunday, announcing the death of his wife and child to his father, and requesting him to come

to him.   The defendant negligently failed to de-
liver the message until the next day, too late for
the funeral.   *Held:* That the plaintiff was entitled
to . recover, and that exemplary damages were
proper."

In the other case, Stuart sued the defendant for
the non-delivery of a telegram, whereby he was
prevented from seeing his brother in his last ill-
ness and being present at his funeral.   Compensa-
tion for injury to the feelings was allowed, and a
judgment for $2,500 was sustained.

The father of the plaintiff in the Levy case
just mentioned also brought suit for the negligent
failure of the company to deliver to him his son's
telegram.   The Court held that he (the father)
could not recover for mental suffering, because he
averred no actual damage to sustain his action;
and in this decision So Relle's case was disap-
proved to the extent that it was supposed to au-
thorize a recovery for injury to the feelings only.
*G. C. & Santa Fe R'y Co.* v. *J. Levy,* 59 Texas,
563 (46 Am. R., 278).

These four are the only cases bearing upon the
exact question under consideration which we have
been able to find, or to which our attention has
been called by counsel.

Then, upon what we regard as sound reason,
public policy, and authority as well, we are con-
strained to differ with His Honor, the Circuit
Judge, and hold that the first ground of demurrer
is not well taken in any particular.

That the amount of damages allowable in such a case as this is not capable of easy and accurate mathematical computation is freely conceded; but that should not be a sufficient reason for refusing or defeating the right of action altogether; for the same objection may be urged with the same force in all cases where mental and bodily suffering are treated as proper elements of damage.

It is very appropriately said, however, in the conclusion of the opinion in So Relle's case that "great caution should be observed in the trial of cases like this, as it will be so easy and natural to confound the corroding grief occasioned by the loss of the parent or other relative with the disappointment and regret occasioned by the fault or neglect of the company; for it is only the latter for which a recovery may be had, and the attention of juries might well be called to that fact."

Nor do we think the suggestion that the decision we are making may encourage the bringing of other suits of a similar nature is of very great moment as a matter for the consideration of the Court in its endeavor to reach a just and sound conclusion.

It is rather to be hoped that instances of such dereliction of plain, easy, and important duty have not been very numerous in the past, and that they will seldom transpire in the future.

The other ground of demurrer is, that the plaintiffs cannot maintain this action for want of

privity of contract between them and the defendant. This ground is also bad.

The question is whether a person, to whom. a telegrapic message is directed, has a right of action against the company for its negligent delay or non-delivery of the message.

." In England this question is undoubtedly answered in the negative. In America, on the other hand, it is invariably answered in the affirmative." Gray's Com. by Tel., Sec. 65; Wharton on Neg., Sec. 758; 3 Suth. on Dam., 314; Sher. & Red. on Neg., Sec. 560; 2 Thomp. on Neg., p. 847, Section 11.

The application of the American rule in this case is proper in the highest degree, for the messages themselves show unmistakably that they were intended for the benefit of Mrs. Wadsworth, and that she, of all persons, was the one interested in the intelligence to be conveyed.

Moreover, she is "the party aggrieved," and our statute gives the right of action to such party. Code (M. & V.), § 1542.

The judgment is reversed, and the case remanded at the cost of defendant.

CONCURRING OPINION.

The following concurring opinion was delivered :

TURNEY, C. J. While fully concurring in the results of Judge Caldwell's opinion, I do so on

the following grounds, as well as upon grounds stated in the opinion:

Our statute, after providing for the use of the telegraph in case of war and for the arrest of criminals, enacts: "Any officer or agent of a telegraph company who fails or refuses to carry out the preceding section is guilty of a misdemeanor." Code (T. & S.), § 1321.

"All other messages, including those received from other telegraph companies, shall be transmitted in the order of their delivery, correctly and without unreasonable delay, and shall be kept strictly confidential." § 1322 (T. & S.).

Any officer or agent of a telegraph company who violates either of the provisions of the preceding section is guilty of a misdemeanor, and he and the telegraph company or proprietor are also liable in damages to the party *aggrieved.* § 1323 (T. & S.).

These provisions are broad and undiscriminating, embracing in terms all messages, commanding their transmission, and subjecting the agent and company or proprietor to respond in damages to the party aggrieved for a failure to comply. The law has made no distinction by defining the character of the message, the failure of whose transmission entitles a party to damages, and the courts can make none. So it must be that some damages may be recovered in any sort of case when the law has been violated, the amount, of course, depending on the facts of each particular case.

It is presumed that if a party propose to send a telegram it is of consequence to him, or to the person to whom it is sent, in an amount greater than the money charge for the transmission. With the extent of the interest or concern of the sender, or of the person to whom sent, the agent or company has nothing to do. When called upon to dispatch a message, or deliver it, he has but one office to perform, which is to put his machine to work and see that the message goes " correctly and without unreasonable delay; " and, if one be sent ·to his office, that it be delivered " correctly and without unreasonable delay." He will not be permitted to speculate upon the value or importance of the message. So far as he is concerned, that is a matter exclusively for the judgment of the sender or receiver. If he fail or refuse to send or deliver, the question of damages is one for the courts. So that, put the case as we may, we can evolve from the law but the one duty for the company through its agent—viz.: Send and deliver the message.

Telegraphy is young, and consequently comparatively little litigation has resulted from it. It is an institution *sui generis.* In laying down rules of law for its government we must look to its uses. While it is a common carrier, and as a rule governed by the principles of law applicable to common carriers, this must be understood as not restricting courts to the literal definitions of the duties and liabilities of common carriers of per-

Wadsworth v. Telegraph Company.

sons or goods, but must be interpreted to meet the nature and purposes of the creature. The use of the telegraph cannot possibly result in injury to the person or property, as it is not a carrier of either. Its only patronage is intelligence. Its only default is failure to transmit and deliver, and for these alone can it be held to account in damages; and to these alone courts must direct attention and investigation. That it may be difficult to estimate the damages in some cases is no reason for saying an action does not lie. As said before, the circumstances of each case must determine the amount of damages.

We cannot agree with counsel that mere sentiment is the basis of this suit. The love of a sister for her brother, and her desire to be with him in his last moments, and after death care for his body and its burial, are not mere sentiments. They are the promptings and commands of nature, affection, humanity, and duty, and should not be trifled with by indifferent, incompetent, or heartless operators in telegraph offices.

There is no danger of great wrong coming from the enforcement of damages for neglect of duty. If juries may occasionally assess excessive damages, the courts can and will correct the wrong. If companies do their duty in the selection of agents (an easy matter), they will have no occasion to complain. If they employ unworthy agents, and injury results to them therefrom, they have no right to complain, and should not be heard

when they do. It is much easier for companies to correct the evil, and more consistent with their duty to do so, than that the public should submit to it. Let them understand that they have a duty to perform, and must do it or respond in damages, and there will be an end to negligence and unfitness in operators, to whom the law allows no discretion and the courts must give none.

The language of the statute authorizes this action in terms. It gives the right to sue to the "party aggrieved," the party to whom pain and sorrow have been given, and who has been vexed and harrassed. When the law makes an act of omission or commission a criminal offense, and in the same connection (as here) gives a right of suit for such omission or commission, it follows, of course, that damages may be recovered in a civil proceeding.

### DISSENTING OPINION.

The following dissenting opinion was delivered:

LURTON, J. I am unable to assent to the opinion of the majority. I deem the law of the case, as announced, as of so dangerous a tendency as to justify an expression of the grounds of my dissent. That an action for injury to the feelings, or fright, or grief, or other mental injury cannot be sustained as an independent ground of action is conceded by the concurrent assent of authors and judges.

To recover for such an injury, it must be the accompaniment of actual physical injury, unless it be the exceptional action for a breach of marriage promise, or for seduction. As an accompaniment of bodily injury, or as a result of such injury, it may be the subject of consideration in the ascertainment of damages, but not otherwise.

Says an eminent writer: " Mental anguish, of itself, has never been treated as an independent ground of damages so as to enable a person to maintain an action for that injury alone; neither has insult or contumely. Mental anguish of the most excruciating character may, and generally does, result from charging a lady with being a prostitute, or a gentleman with being a black-leg or a cheat, yet, unless productive of special damages apart from the mental suffering occasioned thereby, no action will lie." Woods' Mayne on Damages, 75.

The Supreme Court of Texas are alone in sustaining actions of the kind now under consideration. But that Court, in an exhaustive opinion, held that the receiver of a telegram, paid for by the sender, could not sustain an action grounded alone upon an injury to his feelings. That case was this: A son paid for and sent a message to the plaintiff, his father, advising the latter of the death of the wife and child of the sender. There was delay in the delivery, whereby the plaintiff was prevented from attending the funeral. The Court held that there was neither allegation nor

proof of any damage to the plaintiff, unless mental suffering alone constituted a ground of action; and they held that for mental suffering alone no suit would lie. *Gulf and Santa Fe Railway Co.* v. *Levy*, 59 Texas, 563 (S. C., 46 Am. Rep., 278).

The same Court, in a suit by the son of the plaintiff in the action just mentioned, held that the son, as the sender of the message, and as having paid for its transmission, could maintain a suit; and, said Judge Staton, in speaking for the Court, "upon the whole case, as made by the petition and evidence, we are of opinion that the appellee was entitled to recover whatever damages the proof may justify over and above such sum as he paid for the transmission of the message, *and this in the way of exemplary damages*, if the negligence of the appellants, in failing to deliver the message, was willful or gross, which is a matter to be determined by the jury." *G. C. and Santa Fe Railway Company* v. *Levy*, 59 Texas, 542 (S. C., 46 Am. Rep., 269).

That exemplary damages cannot be recovered save in actions for a tort will, perhaps, be conceded. Compensation is the rule of damages, both in tort and contract, and only when the tort is done recklessly and wantonly may damages more than compensatory be recovered. That a contract should be breached " recklessly," and " willfully," and " wantonly " is essential to recovery of punitive damages, but such adjectives are most manifestly out of place when not applied to one

of that class of wrongs denominated torts. This Texas case is, perhaps, the first instance of the allowance of vindictive damages for the breach of a contract not producing a *personal* wrong. The error of such a holding soon occurred to that Court, and the exemplary damage doctrine of the Levy case was overruled; but, having begun to sustain such actions, they placed the last case upon the ingenious theory that damages for injury to the feelings could be recovered by way of *compensation*, and *not* as exemplary damages, provided the plaintiff could show that, in addition to such injury, he had such a case as would permit a recovery of "some damages" upon *other* grounds. *Stuart* v. *W. U. Tel. Co.*, 66 Texas, 580 (S. C., 59 Am. Rep., 623).

Such damages clearly cannot be recovered as exemplary damages, and the opinion of the majority does not rest upon such a basis. The rule that an action will not lie for injury to the feelings is conceded by the majority, but the claim advanced that such rule is alone applicable to actions "where physical injury is the sole ground of the action." This limitation upon the applicability of the doctrine is not supported by authority, nor does it rest upon any sound deduction. That an *independent* action for injured feelings cannot be maintained must be conceded. If the ground of the action be a physical injury, and such an injury be established, then, as an accompaniment of substantial physical injury, mental suffering is a sub-

ject for consideration. But if the plaintiff fail to prove a physical injury, his whole case must fail, though there be ever so much mental anguish. This is as far as any case goes. There can be no bodily suffering without pain of mind, and the law refuses to separate the one from the other, and allows compensation for the whole injury. *Johnson* v. *Wells, Fargo & Co.*, 3 Am. Rep., 245; *Canning* v. *Williamstown*, 1 Cush., 451.

"Mental pain and anxiety the law cannot value, and does not pretend to redress when the unlawful act complained of causes that alone." *Lynch* v. *Knight*, 9 H. L., 577, as quoted by opinion in *Wyman* v. *Leavett*, 71 Maine, 227. The last case (*Wyman* v. *Leavett*) was an action for injury to *property* by negligent blasting; and as an additional element of damage it was sought to recover for mental pain resulting from fright and anxiety caused by the blasting. The Court held no recovery could be had for such injury. 71 Maine, 227 (S. C., 36 Am. Rep., 303).

Upon the assumption that mental suffering is not ground of action when the basis of suit is physical pain, it seems to be agreed that therefore such damages may be recovered where the ground of suit is not physical pain, but pecuniary loss. *Non constat.* If excluded in the first class of cases, or as an independent ground of action, *a fortiori*, it ought to be ignored when the cause of action is pecuniary loss.

The rule may only have been announced in

Wadsworth *v.* Telegraph Company.

actions sounding in tort, such as actions for injury to the person, or in cases of wanton injury to property, but this is most obviously due to the fact that no claim for such damages was ever before made where the basis of the suit was a breach of contract. The reason why an independent action for such damages cannot and ought not to be sustained is found in the remoteness of such damages and in the metaphysical character of such an injury considered apart from physical pain. Such injuries are generally more sentimental than substantial. Depending largely upon physical and nervous condition, the suffering of one under precisely the same circumstances would be no test of the suffering of another. Vague and shadowy, there is no possible standard by which such an injury can be justly compensated, or even approximately measured. Easily simulated and impossible to disprove, it falls within all of the objections to speculative damages, which are universally excluded because of their uncertain character. That damages so imaginary, so metaphysical, so sentimental, shall be ascertained and assessed by a jury with *justness*, not by way of punishment to the defendant, but as mere compensation to the plaintiff, is not to be expected. That the grief natural to the death of a loved relative shall be separated from the added grief and anguish resulting from delayed information of such mortal illness or death, and compensation given for the latter only, is the task imposed by the law as determined by the majority.

But the rule in question has not been limited, as claimed, to actions based upon physical pain. It has, as we have already seen, upon the authority of Mr. Wood, been applied to actions of slander and libel. No matter how grave the insult or how harrassing to the feelings, there can be no recovery if the slander did not imply a crime or result in some special damage. The same rule applies in actions brought for the death of another. The plaintiff must have a pecuniary interest in such life, and in such cases there can be no recovery for the injured feelings, the grief or anguish suffered by the plaintiff in consequence of the death for which the suit lies. This is the rule, regardless of the relation the deceased bore to the plaintiff. Whether husband or wife or parent or child, the rule is the same; the damages are for the pecuniary loss sustained. *Railroad* v. *Stevens*, 9 Heis., 12; Cooley on Torts, 271, 272.

The true basis of recovery, says Judge Cooley, seems to be stated by Pollock, C. B.: "It has been held," he says, "that these damages are not to be given as a *solatium*. That was so decided for the first time *in banc* in *Blake* v. *Midland Railway Company*. That case was tried before Park, B., who told the jury that the Lord Chief Baron had frequently ruled at *nisi prius*, and without objection, that the claim for damages must be founded on pecuniary loss, actual or expected, and that mere injury to feelings could not be considered." Cooley on Torts, 272.

It is legitimate to consider the evils to which such a precedent logically leads. Upon what sound legal considerations can this Court refuse to award damages for injury to the feelings, mental distress, and humiliation, where such injury results from the breach of any contract? Take the case of a debtor who agrees to return the money borrowed on a day certain, who breaches his agreement willfully, with knowledge that such breach on his part will probably result in the financial ruin and dishonor of his disappointed creditor. Why shall not such a debtor, in addition to the debt and the interest, also compensate his creditor for this ruin, or, at least, for his mental sufferings? How can that case, or many others which may be imagined, be distinguished in principle from the one now decided? Upon what principle can we longer refuse to entertain an action for injured feelings consequent upon the use of abusive and defamatory language, not charging a crime or resulting in special pecuniary damages? Mental distress is, or may be in some cases, as real as bodily pain, and it as certainly results from language not amounting to an imputation of crime, yet such actions have always been dismissed as not authorized by the law as it has come down to us, and as it has been for all time administered.

The rule for the general assessment of damages stated in the opinion—that they should be such as, "considering the nature and benefits of the thing promised, will be adequate compensation"

—is sound to the extent of being axiomatic. Yet this by no means determines, or helps to determine, the question under consideration, which is: *What are legal damages?* What are the injuries for which the law undertakes to give a remedy and provide a measure of compensation? I do not understand that the opinion gives any sanction to the idea that exemplary damages are to be given as part of the "adequate compensation" to which a plaintiff is entitled for a broken obligation. Neither do I understand any sanction to be given to the idea that "adequate compensation" may be recovered in an independent action based alone upon grief, mental anguish, fright, or other metaphysical injury. Upon the contrary, the corner-stone upon which the opinion seems to rest is the assumption that "the declaration discloses a case for the recovery of *some* damages." Upon this predicate is based the right to recover *additional* damages for the mental injury. What damage the declaration discloses the plaintiff entitled to, other than damage for injury to her feelings, is not stated. If by *some damage* is meant some *pecuniary* damage, then this I do not concede. The telegram was received and paid for at the time by her. Her suit is not for the price paid for an undelivered telegram, or for an error in the transmission, but is for damages for *delay in the delivery*. She cannot recover the price paid for transmission and delivery, and does not sue for such price. This delay in delivering is not alleged

to have resulted in any pecuniary loss whatever. Her case is, then, a straight action for damages for delay in delivery of a telegram, and the damages sustained are not claimed to have been other than such as are due for injury to her feelings.

Now, if it be admitted that the receiver of such a message can maintain an · action for damages consequent upon delay, what is the measure of her damages if no pecuniary loss is shown? Clearly her recovery must be limited to nominal damages unless, of course, she may prove and recover for injured feelings a legal damage. Nominal damages are such damages as are recoverable where there has been a violation of legal right without actual damage. In such a case the legal implication of damage remains, and, says a learned author, "this requires some practical expression as the compensation for a technical injury; therefore nominal damages are given, as six cents, one farthing, or one cent—a sum of money that can be spoken of, but has no existence in point of quantity." 1 Sutherland on Damages, 9.

Nominal damages are not, therefore, proof of actual injury, nor given as the measure of pecuniary loss, but as a consequence of a technical injury without actual loss. Where there is a breach of contract without actual loss the damages are nominal. *Scat* v. *Moreland*, 7 Hum., 574.

Upon a judgment by default in an action for damages, the plaintiff's right to recover some damages is established, but the amount is open, and

defendant may show he has no legal claim to damages, and, if successful, the plaintiff is entitled only to nominal damages. *Turner* v. *Carter*, 1 Head, 520.

The argument that nominal damages are inadequate to compensate for the injury sustained is not sound, unless the injury to her feelings is to be compensated. If she can recover only for actual damages sustained, as actual damage is understood by lawyers and courts, then, having sustained no *pecuniary* loss, and having sustained no bodily injury, nominal damages are adequate to the injury sustained. That our feelings or sentiments would be gratified if such dereliction of duty could be visited by imposition of larger damages by way of *solatium* to the plaintiff and punishment to the defendant, is a consideration which neither court or jury can entertain. All of us agree that exemplary damages cannot be given under the law. The controversy is limited as to whether compensatory damages are given by law. The fact that the Code gives a right of action to the party aggrieved by the failure of the defendant to comply with its agreement, cannot possibly throw any light on the question. The Code gives a right to sue for and recover *damages*. This right exists independently of the statute. It is a common law right, and the opinion of Judge Caldwell so treats it. *The statute does not define what damages may be recovered.* We must look to the common law to determine what are *legal damages*. To say that

because the right to sue for and recover damages
is conferred by statute, that therefore damages
for injured feelings may be recovered, is a species
of legal logic which I cannot appreciate.  Of course,
in such case, it would be a matter of no im-
portance whether any pecuniary loss had been sus-
tained, and to this extent · the opinion of Chief
Justice Turney clearly goes.

The statute conferring no new right of action,
and being only an affirmance· of the common law,
and failing to define the damages for which suit
would lie, we must hold that only *legal* damages
can be recovered.  Legal damages are to be ascer-
tained by the common law.   I do not understand
that Judges Caldwell and Snodgrass concur with
Judge Turney in the opinion of the latter that
an independent action will lie, under the statute,
for injury to the feelings.   On the contrary, the
opinion of Judge Caldwell, in which Judge Snod-
grass concurs, rests the right of action upon the
ground that the right to ˚sue for and recover some
pecuniary damages, even nominal damages, will
carry with it the right to recover, in addition,
damages for mental suffering.   This doctrine is
only supported by one adjudged case, that of *Stu-
art* v. *W. U. Tel. Co.*, 66 Texas.

This doctrine is, I respectfully submit, a depart-
ure from the principles upon which damages for
mental injuries have been heretofore allowed.   The
right to recover such damages has been heretofore
made· to depend upon some physical injury hav-

ing been sustained. Bodily injury necessarily involves mental suffering, and the law has allowed a recovery for all the pains suffered from the injury. The law in such case refused to separate the one injury from the other. But now it is proposed to join pecuniary loss to mental pain, and if the first is shown, even though it be nominal, the latter may be compensated.

There is no congruity between the elements of recovery. In the case of physical injury the law found that nature had inseparably blended mental injury, and, they being thus bound together, it refuses to separate the one from the other, and allows compensation for both. This recognition of the *fact* that physical pain and mental suffering were inseparably blended, and that the latter was by nature the accompaniment of the other, was the very ground upon which the law allowed damages for the latter. But to join pecuniary loss and injured feelings is to blend together that which nature has never blended, and for which there is no precedent save the single Texas case.

If such an action is to be maintained, I would prefer it to stand on its feet as an independent action. To suffer it only on condition that the plaintiff has likewise sustained some pecuniary loss, is standing the pyramid on its little end. If entitled to a standing in Court at all, let it be conceded upon the substantial merits of the case, and not placed upon a forced construction of a statute which gives no action which did not exist before

Wadsworth *v.* Telegraph Company.

or upon so obvious a fiction 'as that the right to recover nominal damages for breach of contract carries with it the right to recover for injury to the feelings. We have had some actions which have obtained a standing only by a fiction. The action by a parent for seduction of a daughter is one. The parent could only sue upon the fiction that the parent had sustained damage in that he had been deprived of the services of his daughter. That so meritorious an action should stand upon a fiction has always been a reproach 'to the law, and yet so conservative have the courts been that the necessity of proving some service by the daughter has been rigidly maintained as a prerequisite to any recovery, and this for the reason that the law had always been so held, and the Legislature alone could change it; for, says the eminent Judge Cooley, "the evil is not one to be corrected by judicial action; to uproot it would be to create new law, and this is the province of legislation." Cooley on Torts, 235.

The conservatism of this observation is vastly more applicable here. If the hand of the Judge is so restrained by precedent that it cannot strike down the fiction and sustain a meritorious action upon its merits, how much more unsound and dangerous is the maintenance of a suit upon the fiction that the right to recover nominal damages for a breach of contract will support a suit for injury to the feelings, otherwise not maintainable at all?

The argument pressed with so much force in the opinion of Judge Caldwell that to hold that such damages are not recoverable "would justify the conclusion that the defendant might, with impunity, have refused to receive and transmit such messages at all," is not sound. If it were true that responsibility for pecuniary losses only might not be such responsibility as public policy might require to compel the performance of duty, this would not justify us in imposing a responsibility not sanctioned by law. The remedy would be with the Legislature. But no such stretch of jurisdiction is necessary upon any idea of public policy. The Legislature has provided full and ample means to compel performance of duty by telegraph companies.

Section 1541 of the Code provides that the willful violation of duty in receiving and forwarding and delivering of messages shall be a misdemeanor, and the officer or agent at fault is subjected to fine and imprisonment. Thus the rights of the public are fully protected, and the necessity of imposing tort damages by way of holding the defendant up to the discharge of its duties is fully met. The action of the plaintiff is one which has no public side; no public policy is to be subserved, and we are left to face the question as to whether her action to recover damages for injury to her feelings can be sustained upon authority.

The novelty of a suit is not always a conclusive objection. But the fact that such an action

has been sustained by the courts of Texas alone, and there only upon the fiction that a right to recover nominal damages gives the right to recover for injured feelings, furnishes to my mind a most forceful argument. The principles upon which this suit is maintained seem to me so radical a departure from the headlands of the law, and to so seriously threaten the uprooting of doctrines that I have been taught to revere as the very foundation stones of the system of our law upon the subject of contracts and damages, as to make it my duty to give expression to my views upon the questions involved. The views of the majority have been the result of great investigation and calm deliberation, and have been presented with all the force that is possible; and while I regret to differ so radically with gentlemen who have given such careful attention to my views, yet I am with regret compelled to adhere to the conclusions here advanced.

Agreeing fully with the views above expressed by my brother, Lurton, I am constrained to dissent from the opinion of the majority of the Court in this case.            Folkes, J.