### THE GULF, COLORADO & SANTA FE RAILWAY COMPANY v. CHARLES REED.

#### No. 3608.

1. **Exemplary Damages from Act of Servant.**—The rule of law that the mas-ter is not liable in exemplary or punitory damages for the torts of the servant, unless the master authorized the same or with knowledge of the wrong and its nature has adopted or ratified it so as to make the act his own, is too well settled in this State to be now questioned.   See example.

2. **Ratification by Railway Corporation.**—In case of railway corporations the rule is that to amount to a ratification the adoption or confirmation of the wrongful act of the servant must be shown to be the act of some chief officer, vice principal, or *alter ego* of the company, who must be proved to possess under the company sufficient authority and discretion to act and speak for the company.

3. **Same—Presumptions.**—In the absence of proof we are not authorized to pre-sume the authority to bind the railway company by ratifying an unauthorized and wrongful act of an employe of the company as possessed by the local agent or a subor-dinate employe.

4. **Case in Judgment.** — The yardmaster at a neighboring station in employ of the defendant company caused carcasses of dead cattle to be cast into a bayou near the residence of plaintiff, thereby polluting the water and atmosphere, etc.   For this act the defendant company is responsible for actual damages, but in absence of proof of authority or ratification it is not liable for exemplary damages.

5. **Presumption of Innocence.** — Where the act of the servant is a crime, or is of a willful and malicious character, the law *prima facie* presumes that the perpetrator

of the wrong was not authorized before or sanctioned afterward by the principal. This presumption continues until removed by proof.

6.   **Same.**—Article 390, Penal Code, makes any one polluting a watercourse guilty of an offense punishable by fine not exceeding $500.   The servant would be liable both civilly and criminally; the master only civilly and for actual damages.

7.   **Elements of Actual Damages.**—See suggestions touching acts and effects of such acts which could have been considered by the jury in estimating the actual damages had the court directed their attention.

Error from Harris.   Tried below before Hon. James Masterson. The opinion gives a statement.

*J. W. Terry,* for plaintiff in error.—An employer is not liable for exemplary damages for the act of an employe unless such act has been previously authorized or subsequently ratified.   In the case of a corporation such ratification must be made by a corporate officer of the company, and not by a mere subordinate agent.   Railway v. Cowser, 57 Texas, 306; Hays v. Railway, 46 Texas, 272; Railway v. Moore, 69 Texas, 157; Railway v. Garcia, 70 Texas, 207; Railway v. McDonald, 75 Texas, 46.

*Burke & Kirlicks* and *Henry F. Fisher,* for defendant in error.—When a wrong has been committed by the agents of a corporation, which is a continuing one in its damaging effects, and the evil consequences whereof could be remedied by the corporation (after notice to the officers of such corporation), a refusal to remedy such wrong is in itself an acquiescence in the condition of affairs as brought about by the servants of the corporation, and a corresponding ratification of the original wrongful act.   Henderson v. Railway, 17 Texas, 560; Echols v. Dodd, 20 Texas, 195; Mech. on Agency, par. 133, 146, 158; Railway v. Dunn, 19 Ohio St., 162; Railway v. Arms, 91 U. S., 489; Quigley v. Railway, 11 Nev., 350; Railway v. Blotcher, 27 Md., 277; Railway v. Rogers, 28 Ind., 1; Perkins v. Railway, 55 Mo., 201; Railway v. Bailey, 40 Miss., 395; Gasaway v. Railway, 58 Ga., 216.

On the proposition that it was within the power and was the duty of the company to show that the agent who was notified of the wrong was not in fact an officer of the company, and to show that the company did not acquiesce in the wrong, see Ryan v. Railway, 65 Texas, 20, where Chief Justice Willie in delivering the opinion uses the following words: "It is a salutary rule which presumes the existence of a fact against a party who has the means of disproving it in his power and fails to make use of them."

On the proposition that silence or inaction is acquiescence:   Foot notes to Bigelow on Estoppel, p. 453, where the following language is used:   "In equity, where a man has been silent when in conscience he should have spoken, he shall be debarred from speaking when con-

science requires him to be silent." Hall v. Fisher, 9 Barb., 17, 31; Parkhurst v. Van Courtland, 14 Johns, 15, 43; Malin v. Malin, 1 Wend., 625, 666; Adams v. Rockwell, 16 Wend., 285, 317.

MARR, JUDGE.—There was a verdict and judgment in the court below against the plaintiff in error for $50 as actual and $450 as exemplary damages.

We concur with counsel for the defendant in error that "all of the assignments relied on and urged by the plaintiff in error contend for but the one proposition, to-wit, 'that the verdict and judgment for exemplary damages is unauthorized.'"

The defendant in error Charles Reed, plaintiff in the court below, in September, 1889, was living in Harris County with his family, ten persons in all, on seven acres of land near the city of Houston; which land bordered on and took in part of Bray's Bayou, a small creek or bayou in said county. Immediately on the water's edge of said bayou, and on the seven acres owned by Charles Reed, was a spring. It supplied his family and his stock with its clear waters; he had no well or cistern on his place. The track and roadway of the Gulf, Colorado & Santa Fe Railway crossed Bray's Bayou at a point near and above the land of Charles Reed, and south of same. The natural flow of the water of Bray's Bayou was from the point where the railway crossed it toward Charles Reed's seven acres and spring. The Gulf, Colorado & Santa Fe Railway Company started out to make Bray's Bayou, at the point where its bridge and track crossed it, and within a stone's throw of Reed's house (forty-four feet), a "dumping" place for dead hogs and cattle; established and used by servants of the defendant on two or three occasions without the consent of the plaintiff Reed, but against his wishes. He brought this action against the defendant to recover both actual and exemplary damages for the acts of its servants in "dumping" dead cattle in said bayou on two different occasions in the month of September, 1889, whereby it is alleged the water of the stream and of the spring used by the plaintiff and his family was polluted and rendered unfit for use, in consequence of which he and his family became sick, etc., and his horses died from drinking the foul waters, etc. He also charged that the acts of the servant or servants were committed willfully and maliciously and by order of the defendant, and that he had notified the defendant of the acts of its servants and requested it to remove the carrion from the bayou, but this it refused and failed to do, but in every particular encouraged the servants in the acts and fully confirmed and ratified the same. The fact is not disputed on this appeal that an agent of the company, one Potter, the yardmaster of the defendant at Houston, did put the dead cattle into the bayou as alleged by plaintiff and as above stated. Assuming, after verdict, the truth of plaintiff's evidence, it appears that in September, 1889, that Potter,

as servant of defendant, placed the carcasses of dead cattle in the bayou. On the first occasion he put a dead cow in there, near plaintiff's residence, and within two or three days thereafter three more dead cows. When the first of these animals was put into the stream plaintiff went to the office of the defendant in Houston and made complaint of the fact to a person there who was pointed out to him as defendant's agent, and who "acted as if he had control and management of the office and those in it. There were three other men there besides him. I thought he was the same man who paid me the $10 in the office when the hogs had been thrown there before." Elsewhere: "I do not know the name of the man," etc. (testimony of plaintiff.) Plaintiff requested this party to have the cow removed, but this was never done. In fact none of the cattle were removed, but were allowed to decay where deposited. He replied to plaintiff: "It might be the section boss put them there." These cattle had died or been killed in transportation on defendant's road. Over a year before the acts complained of in this suit had occurred a servant of defendant had thrown a car load of dead hogs in the same place, for which on demand the company voluntarily paid plaintiff damages in the sum of $10, but this act of depositing the lately deceased swine was not performed by Potter but by another servant of the company. He had but recently began working for the company at Houston when he placed the cattle in Bray's Bayou, though he had been working for the defendant at other places.

We believe that the foregoing statement is a fair summary of all the facts bearing upon the point at issue, and in view of which we feel constrained to hold that the verdict and judgment rendered in the court below against the plaintiff in error for exemplary damages is manifestly against the law and the evidence. The rule of law that the master is not liable in exemplary or punitory damages for the torts of the servant unless he authorized the same, or with knowledge of the wrong and its nature has adopted or ratified it so as to make it his act in fact, is too well settled in this State to be now questioned. In case of railway corporations the rule is that, to amount to ratification, the adoption or confirmation of the wrongful act of the servant must be shown to be by some chief officer, vice-principal, or *alter ego* (as he is sometimes called) of the company, who must be proved to possess under and for the company sufficient authority and discretion to act and speak for the company as if it were, figuratively speaking, bodily present in the persons of its managers, speaking and acting for itself and on its own responsibility. No such authority is possessed by a local agent or subordinate employe as a general rule, or at least we are not authorized to presume the existence of the authority upon their part in the absence of proof to that effect. Railway v. McDonald, 75 Texas, 46; Dillingham v. Russell, 73 Texas, 47; Railway v. Garcia, 70 Texas, 207.

Neither the yardmaster who committed the torts nor the agent to whom the complaint of the last trespass was made by the plaintiff is shown to have been a chief officer, vice-principal, or independent representative of the company in the matter complained of; consequently under the law the corporation can not be held liable for punitory damages on account of the willful act of the one in committing the tort or for the conduct of the other in adopting or approving it, even if his conduct can be said to have that effect.

For the acts of Potter, presumably done in the line of his employment or in the interest of and on behalf of the company (as there is no issue raised on that point), the defendant is liable only for actual damages, even conceding that his conduct in the premises was both willful and wrongful, since the company neither authorized nor commanded him, so far as the proof shows, to commit the trespass, nor ratified his illegal acts afterward.

There is no evidence that the company was informed of the trespass made the basis of the present action, nor is this issue presented except so far as it may be by the information given to the local agent at Houston to which we have already referred. It was not proved, if such was the fact, that the office of the company at Houston is its principal office, and whether that would have altered the case we do not decide. Mere silence unless required to speak and act, or even satisfaction at the commission of the wrong unaccompanied by some act of adoption, will not amount to ratification. Cool. on Torts, 127. Nor will the retention of the guilty servant *of itself* render the principal liable for the original tort on the ground of ratification—certainly in the absence of proof of his incompetency or that his continual employment by the company has reference to and is connected with "the acts of the servant in the matter about which complaint is made." Railway v. McDonald, 75 Texas, 41; Dillingham v. Russell, *supra.*

In this case, however, it may be observed that the petition does not make by direct allegations the retention of Potter in the service of the company a ground of ratification. The counsel for defendant in error contend that it was incumbent in the court below on the plaintiff in error to have shown (if such was the case) that the employes of the company we have referred to were merely its servants—not chief officers or vice-principals. On the contrary, if these employes were not in fact proved to be mere servants, we think nevertheless that the burden was on the plaintiff to allege and establish by proof such state of facts as would warrant the recovery of exemplary damages. Railway v. Garcia, *supra;* Railway v. Burns, 71 Texas, 479. Where the act of a servant amounts to a crime, or is of a willful and malicious character, the law *prima facie* presumes that the perpetrator of the wrong was not authorized before nor sanctioned afterward by the principal, and this pre-

sumption continues until repelled by proof to the contrary. Dilling-ham v. Russell, *supra.*

Article 390 of our Revised Penal Code declares that "if any person shall in any wise pollute or obstruct any watercourse, lake, pond, or marsh, etc., or *continue* such obstruction or pollution so as to render the same *unwholesome* or *offensive* to the inhabitants of the county or *neighborhood thereabout,* he shall be fined in a sum not exceeding $500." Comment is unnecessary. The servant, under the facts affirmed by the verdict, would be liable both civilly and criminally, but the company only *civilly* and for actual damages, etc. If the jury had returned their verdict for the $500 found by them for the plaintiff simply and solely as actual damages, then assuming the sufficiency of the petition a very different case would be presented to us for consideration. The charge of the court below was a concise presentation of the measure of actual damages and is not complained of and is without error, yet the court did not call the attention of the jury to such matters or items as may constitute actual damages without proof of the expenditure of *money* by the plaintiff. This the court was not bound to do without a request to that effect, and then only to the extent which the allegations of the petition would justify. The jury very likely understood that the law only allowed actual damages for the amount of money expended and the destruction of plaintiff's property (if any), etc. If it be true as contended by counsel for the defendant in error in their brief (and there is much evidence supporting the contention), "that the remains" of the dead animals which the servant had unlawfully deposited near plaintiff's spring and residence "were permitted to fester and putrify; that the water became polluted, the atmosphere foul; that Reed's family got sick from the poisonous odors, his horses died, his family had to be almost hermetically sealed up in their home or breathe the pestilential fumes with which the surrounding atmosphere was laden," and that all these things resulted from the acts or culpable omission of defendant's servants, then while it would seem that all of these things might, under appropriate allegations and proof, be taken into consideration by the jury as elements of actual damages, as well as money he expended or property destroyed (if any), in assessing the amount thereof sustained by the plaintiff (Field on Meas. of Dam., secs. 742, 747–749; Cooper v. Randall, 53 Ill., 24; 2 Wood Nuis., chap. 13; Vedder v. Vedder, 1 Denio, 257; 2 Wood Nuis., secs. 579, 586; 2 Wood Ry. Law, pp. 1378, 1379; 71 Texas, 396), still these circumstances of aggravation, result-ing alone from the acts of the servants, could not have the effect to enlarge the well settled rules of law (which we have attempted to indi-cate) so as to render the company liable for exemplary damages, when otherwise under the facts of the case it would not be liable for that character of damages.

Because the verdict of the jury is not supported by the evidence as to exemplary damages and is against the charge of the court on that subject, we conclude that the judgment ought to be reversed and the cause remanded.

. *Reversed and remanded.*

Adopted March 24, 1891.