*Clews*, 115 U. S. 528; *Graham* v. *R. Co.*, 102 id. 148, 109; *Milwaukee & Minn. R. R. Co.* v. *Mill & West. R. R. Co.*, 20 Wis. 174, 183; *Powell* v. *Knowler*, 2 Atk. 224; *Hill* v. *Boyle*, L. R. (4 Eq.) 260; *De Hoghton* v. *Money*, L. R. (2 Ch.) 164, 169; *McMahon* v. *Allen*, 35 N. Y. 408; *Flood* v. *Finley*, 2 Ball & B. Ir. Ch. 9.

Although the demurrer was to the counterclaim, it was proper on the trial thereof to inquire into the sufficiency of the complaint, and the latter failing to show a cause of action, to render judgment for its dismissal. *Corning* v. *Roosevelt*, 18 Civ. Pro. Rep. 399.

Judgment affirmed, with costs.

BOOKSTAVER and PRYOR, JJ., concur.
Judgment affirmed.

---

### DONIVAN *v.* MANHATTAN R'WAY CO.

(New York Common Pleas — General Term, November, 1892.)

For the willful tort of a servant, a master is not answerable in punitive damages, unless he authorize or ratify the tort, or be guilty of misconduct in the employment or retention of the servant.

Punitive damages being imposed as a punishment for the willful or reckless misconduct of a wrongdoer, cannot be inflicted regardless of his intent, whether good or bad.

It is error, therefore, to charge that a corporation master is responsible in punitive damages for an inexcusable assault and battery by its servant, when the evidence authorizes the inference that the servant acted from an innocent motive, and in the supposed discharge of his duty.

When a proposition of law is true only with a qualification or limitation, it is error to charge it absolutely and unconditionally, if the evidence calls for the application of the qualification or limitation.

It is error, therefore, to charge that a corporation master is liable in punitive damages for the willful tort of its servant, in the absence of evidence that the master authorized or ratified the tort, or was guilty of misconduct in the employment or retention of the servant.

The mere retention of a servant after his willful tort, without proof of knowledge of the tortious quality of the act, on the part of the master, is insufficient to authorize an inference of a ratification of the tort.

A carrier corporation is not liable in punitive damages for an assault and battery by its servants, on a passenger, unless the corporation authorize or ratify the tort, or wrongfully employ or retain the servant.

When the evidence as to a fact is conflicting, it is error so to charge as to give the jury to understand that they may find the fact on the testimony of the plaintiff's witnesses alone.

APPEAL from judgment on a verdict, and from an order denying a new trial.

Action for injuries inflicted on plaintiff by defendant's servants in ejecting him from the platform of defendant's railway. Plaintiff had a verdict in the sum of $16,000.

*Edward C. James*, for defendant (appellant).

*Michael H. Cardozo*, for plaintiff (respondent).

PRYOR, J. Assuming the aspect of the case most favorable to the plaintiff, as presented by the pleadings and proofs, he has recovered a judgment against the defendant for a willful injury by its servants, while he sustained to it the relation of passenger. *Dwinelle* v. *New York Central, etc., R. Co.*, 120 N. Y. 117; *Carpenter* v. *Boston & Albany R. Co.*, 97 id. 494; *Stewart* v. *Brooklyn, etc., R. Co.*, 90 id. 588. The validity of the judgment is challenged by many exceptions, of which two only need be subjected to consideration.

In compliance with a request of the plaintiff, the judge charged : " If the jury find that the plaintiff, at the time he was ejected from the platform, was not committing any breach of regulation or other misconduct, and was not intoxicated, they have a right to find that the attempt to eject him was an utterly inexcusable assault and battery, for which the defendant may be held liable for punitive damages," to which instruction the defendant duly excepted.

Upon its terms, the proposition submitted to the jury cannot be upheld. It affirms that the plaintiff being without fault, the attempt to eject him of itself subjected the defendant to punitive damages; whereas, the law is that the denunciation of punitive damages is directed against the evil intent of the wrongdoer, and in the absence of that intent is unwarrantable. *Hamilton* v. *Third Ave. R. Co.*, 53 N. Y. 25. It may be, and the evidence tends to establish, that defend-

47

ant's servants, in ejecting the plaintiff, honestly and reasonably believed him to be guilty of misconduct, in which event they, and *a fortiori* the defendant, would not be liable beyond the measure of mere compensation. And yet, without reference to the intent of the defendant's servants, whether good or bad, the charge authorized the jury to award punitive damages simply upon the ground of an unjustifiable assault on the plaintiff. Here was clear error (*Hamilton* v. *Third Ave. R· Co.*, 53 N. Y. 25, 29, 30); and since, for anything apparent in the record, the jury exonerated the servants from improper motive, the error is inevitably fatal to the judgment. *Cleghorn* v. *New York Central, etc., R. Co.*, 56 N. Y. 44, 49.

Assuming, however, that the persons who inflicted the injury on the plaintiff were responsible to him in punitive damages, still the defendant was not so answerable merely because of its relation to the actual wrongdoers; and if this proposition be correct, it follows that, since the charge imputed liability for punitive damages to the defendant because simply of that relation, the instruction involves a vicious principle, and is again fatal to the judgment.

The principle of punitory damages in a civil action crept into the jurisprudence of England by imperceptible approaches, is recognized by no other system of law, and is impugned by writers and judges of authority as illogical, unphilosophical and pernicious to the administration of justice. 2 Greenl. Ev. § 253, note 2; *Fay* v. *Parker*, 53 N. H. 342; 16 Am. Rep. 270; *Murphy* v. *Hobbs*, 7 Colo. 541; 49 Am. Rep. 366, 370; *Stewart* v. *Maddox*, 63 Ind. 51; *Spokane, etc., Co.* v. *Hoefer*, 2 Washington, 43; 26 Am. St. Rep. 842.

Conceding the doctrine to be incorporated into the jurisprudence of this state, the question for adjudication is, whether for the willful tort of his servant, a master, without more, is liable in punitory damages? Upon principle, the answer is obviously in the negative. Since punitory damages are inflicted as a punishment for the evil intent or bad conduct of the wrongdoer, and since *ex hypothesi* the master is guilty of no such intent or conduct, in reason and justice he is not

amenable to the penalty. "When there has been no intentional offense committed, when a party has only done what he honestly believed to be his duty, punishment is not deserved." GROVER, J., in *Hamilton* v. *R. R. Co.*, 53 N. Y. 30. Nor, are the absurdity and injustice of the contrary rule mitigated, but aggravated rather, by the imputation of the guilt of the servant to the innocent master. Vicarious punishment is not a principle of human law. A judgment for compensatory damages affords a plaintiff complete reparation for his injury; and if, in the interest of the public, punishment should be inflicted, common justice requires that it fall only on the guilty. Of late only has a master been made responsible in compensation for the willful tort of his servant (*Mali* v. *Lord*, 39 N. Y. 381); to push the principle of vicarious liability to the point of imposing punishment for an imputed offense, would not only violate all analogy, but would shock every instinct of justice.

How stands the question upon authority? In some other jurisdictions, decisions sustain the principle of the absolute liability of a master in exemplary damages for the wrongful act of his servant, but the clear preponderance of adjudication is to the contrary. *Hagan* v. *Providence, etc., R. Co.*, 3 R. I. 88; 62 Am. Dec. 377, and cases collected in note 385, 386; *Gulf, etc., R. Co.*, 80 Texas, 362; 26 Am. St. Rep. 749, where it was ruled that: "A master is not liable in exemplary or punitive damages for the tort of his servant unless he authorized it, or with knowledge of the wrong, adopted or ratified it so as to make it his act in fact."

In *Rickets* v. *R. R. Co.*, 33 W. Va. 433; 25 Am. St. Rep. 901, the law is propounded thus: "A railway corporation is not answerable in exemplary damages for an assault on a passenger by one of its agents, made in a malicious, unlawful or unnecessary manner, when there is no evidence that it was ever authorized, ratified or approved by the corporation, or that the servant was incompetent or of known bad character." A recent writer of repute, says: "The better and more reasonable doctrine seems to be that the railway company is not to

be held liable in exemplary damages for injuries caused by the negligence of its servants, unless it be shown that the servant's act was willful, and was either authorized or ratified by the company." Patterson on Railway Accident Law, 471, § 392.

But whatever the weight of decisions abroad, in this state, at least, the question is concluded by authoritative adjudications. In *Cleghorn* v. *New York Central, etc., R. Co.,* 56 N. Y. 44, the proposition is: "For negligence, however gross or culpable, of a servant while engaged in the business of the master, the latter is not liable in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established, however, by showing that the act of the servant was authorized or ratified, or that the master employed or retained the servant, knowing that he was incompetent, or, from bad habits, unfit for the position he occupied."

And in *Fisher* v. *Metropolitan, etc., R. Co.,* 34 Hun, 433, the Supreme Court in the first department, per DANIELS, J. (DAVIS and BRADY, JJ., concurring), ruled, that "a railroad company cannot be held liable for punitive damages unless shown to have been itself guilty of gross neglect or misconduct."

Such being the law of New York, the error in the charge under criticism is manifest, and consists in the omission of the requisite qualification of the liability of a master in punitory damages for the tort of the servant, namely, the privity or misconduct of the master himself. "We cannot say but that the jury may, under the charge, have allowed exemplary damages, without finding the necessary facts authorizing them to do it, and hence the defendant may have been injured by the charge. We feel constrained to hold that the charge was erroneous in this respect, the rule, with its limitations, should have been explicitly stated." 56 N. Y. 49 ; 34 Hun, 433.

In the case at bar, the magnitude of the verdict itself imports an allowance for punitive damages ; and supposing the evidence to authorize such allowance, still we are unable, under the charge, to say that the jury did not render the verdict without finding the defendant guilty of any participation in the wrong or other misconduct. A reversal of the judgment

results, therefore, without reference to the state of the evidence.

We may add, however, that upon a critical examination of the record, we find no proof of any misconduct of the defendant. The only circumstance adduced to fix the defendant with exemplary damages, is the alleged fact that "after the ticket agent reported the occurrence" and the plaintiff commenced his suit, the defendant did not discharge the servant, but resisted the action "upon the sole issue that the plaintiff was guilty of misconduct, and that the servant had a right to eject him." It is not apparent that the defendant was apprised of the wrongful nature of its servant's act, without which knowledge there could be no ratification; but, on the contrary, by the very terms of counsel's proposition, it is manifest that the defendant believed its servants innocent of any wrong, and rightfully ejected the plaintiff because of misconduct. But, to authorize an inference of ratification, it must appear that the party ratifying had knowledge of all the facts and circumstances attending the transaction. *Vincent* v. *Rather*, 31 Tex. 77; 98 Am. Dec. 516; *Gulick* v. *Grover*, 33 N. J. L. 463; 97 Am. Dec. 728, and note; *Billings* v. *Morrow*, 7 Cal. 171; 68 Am. Dec. 235, and note. "A company cannot be held to ratify an assault and battery committed by its servant by retaining him in its service, where it believed his account of the affair, and thought it just to manifest the *status quo* until a judicial determination of the matter." *Williams* v. *Pullman Palace Car Company*, 40 La. Ann. 87; 8 Am. St. Rep. 512.

The judgment is invalidated by another and still more obvious error in the charge. A question of moment on the amount of damages and strenuously contested on the trial was, whether plaintiff's injuries would in time pass away, or develop ultimately into some fatal form of mental malady. The issue hanging in suspense on the balance of expert testimony, the learned trial judge charged that "if the jury believed from the evidence of the physicians called on the part of the plaintiff that the injuries which the plaintiff had

sustained will develop into some serious condition hereafter, the plaintiff is entitled to recover damages for such pain and suffering as the jury believe he will sustain." Thus, in terms, the determination of the disputed fact, material to the amount of recovery, was submitted to the jury on the plaintiff's evidence alone, to the exclusion of all contrary evidence adduced by the defendant. Argument is unnecessary to demonstrate the mischievous illegality of this instruction.* The direction to the jury should have been to ascertain the fact upon all the evidence. *State* v. *Whit*, 72 Am. Dec. 548.

As we cannot know but that the fact was found for the plaintiff upon the strength of his evidence, and in total disregard of the contradictory testimony produced by the defendant, the proposition presented to the jury necessarily requires a reversal of the judgment.

Judgment and order reversed and a new trial directed, costs to abide the event.

Daly, Ch. J., and Bischoff, J., concur.
Judgment and order reversed and new trial directed.

---

*In *Chapin* v. *Erie Railway Co.*, 55 N. Y. 579, it was held no error for the court to refuse to charge that if the jury believe certain specified witnesses they must find for the party in whose favor they testified.