**PAYNE, Agent, v. TEAGUE.  (No. 806.)**

(Court of Civil Appeals of Texas. Beaumont. May 31, 1922. Rehearing Denied June 7, 1922.)

**1. Appeal and error ⬥866(3)—On appeal for refusal of peremptory charge, only question whether issue raised.**

Under an assignment of error for refusal to instruct a verdict, it is only necessary to determine whether, under the evidence offered, an issue was raised.

**2. Assault and battery ⬥42—Where evidence raised question of liability, refusing peremptory charge not error.**

Where the evidence raised an issue as to whether a special officer employed by a railroad company acted in the course of his general employment at the time of an alleged assault or in his capacity as deputy sheriff, and whether the employee was attempting to take a grip supposed to contain liquor and not to arrest the husband of the woman assaulted, the refusal of the company's request for a peremptory charge was not error.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Elsie M. Teague and another against John Barton Payne, as Agent. From judgment for plaintiff named, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

Woods, King & John, of Houston, for appellee.

WALKER, J. This was a suit for damages against appellant by plaintiff, Elsie M. Teague, joined pro forma by her husband, Henry M. Teague, for an assault which she alleged was committed on her person by one David McReynolds a special officer in the employment of appellant. The trial was to a jury, and on their verdict judgment was entered against appellant in the sum of $3,500.

Refusal of the court to give a peremptory charge in favor of appellant forms the basis of the only assignment of error presented on this appeal. Appellant say the refusal of this charge involves two issues:

"(1) Was the servant of the defendant company, McReynolds, at the time he committed the assault upon the plaintiff, Elsie M. Teague, acting for and on behalf of the defendant company, or was he acting for and on behalf of the Department of Justice?

"(2) Was David McReynolds, at the time he made the assault, if any, upon Mrs. Elsie M. Teague, acting within the scope of his authority, as special agent for the defendant company, or acting in the discharge of any duty he owed to the railroad company?"

[1] There is support in the record for the following statement of the case: In many points the testimony offered by appellant sharply conflicted with this statement; but under the assignment complaining of the trial court's refusal to instruct a verdict, it is only necessary to determine whether, under all the evidence offered, an issue of liability was raised. We are not concerned with the credibility of the witnesses, nor with the weight of their testimony, nor with conflicts in the testimony. Under the evidence offered, the jury could have found all the facts given in this statement.

John Barton Payne was sued in his representative capacity as Agent of the Director General of Railroads. On May 3 and 4, 1919, and prior and subsequent to that time, Walker D. Hines was Director General of Railroads, and as such Director General was operating the lines of the Texas & New Orleans Railroad Company. His superintendent of the Houston division of the Texas & New Orleans was a Mr. Barry. J. S. Webster was head of the special service department of the Texas & New Orleans. Under Webster were Inspectors Bonner and Yolton. Under these inspectors was Special Officer C. Haughton. A Mr. Johnson was also a superior of C. Haughton. Under Haughton was Special Officer David McReynolds. All of these officers of appellant had their offices in the same building, near each

ether, in Houston. Haughton held a commission as a policeman, and McReynolds held a commission as deputy sheriff. Though duly commissioned as civil officers, their employment was under the Director General, and they did not regularly serve any process or perform any duties as civil officers, but gave all their time to appellant's service. On the date mentioned, Henry M. Teague, husband of the plaintiff, was a passenger engineer for the Director General, operating passenger trains on a division of the Texas & New Orleans from Houston, Tex., to Lafayette, La., and had been in this service for about 20 years. At that time he and plaintiff lived in Houston. On the 3d day of May, 1919, one McPhail, who was a special agent for the Department of Justice, holding a commission under the Attorney General of the United States, received a wire from Menenthal, La., advising him that the engineer on a certain train coming from Menenthal to Houston the next morning would bring with him some whisky from Louisiana to Houston. Henry M. Teague was the engineer to whom the information related. At once McPhail notified Special Officer Haughton of the contents of the telegram, as was his custom when he had such information affecting appellant's employees. Haughton told McPhail that there would be several special officers at the depot the next morning to render him such assistance as they could. We do not find that McPhail requested this assistance, but when he gave the information to Haughton, Haughton 'phoned his superior, Mr. Johnson, and then told McPhail that these special officers would be on hand to render him assistance. McReynolds never at any time saw McPhail, but Haughton, his superior, directed him to go to the depot the next morning and meet McPhail. Haughton further ordered McReynolds to go to the depot, get on the back end of Henry M. Teague's engine, and ride up, and if Teague's grip was taken off the engine between the depot and the roundhouse to get it. Quoting McReynolds:

"Mr. Haughton had told me to take that grip if it was taken off that engine. That was my orders."

In the general course of his employment, it was McReynolds' duty to see whether or not there were any infringements of the rules and violations of the law by appellant's employees. It was also his duty to investigate cases involving employees, if he had knowledge that such employees were violating the law or the rules of appellant. It was also McReynolds' duty to make a report of his investigations to his superiors, especially to special agent Mr. Johnson, who was also the superior of Haughton. McReynolds went to the depot the next morning, but McPhail did not meet him. However, when Henry M. Teague's train came in, he got on the back

end of the engine, without the knowledge of Teague, and "rode up" as directed. Before reaching the roundhouse, Teague left his engine, and met his wife in her automobile near the Grand Central depot. McReynolds followed him. Teague carried his grip with him and put it on the back seat of the car. As he was in the act of getting into the car, McReynolds, a stranger to Teague, walked up, touched him on the shoulder, and asked, "Is this Mr. Teague?" Teague answered the greeting, and then McReynolds told him that the roundhouse foreman wanted him at the sandhouse. Teague then turned to go to the roundhouse, telling his wife to return home. While he was walking across the street, he heard his wife scream, and, looking back, saw McReynolds assaulting her. Mrs. Teague thus describes the assault:

"When Mr. Teague came with the engine, he handed me the grip. Mr. Teague saw me standing there, and he got off the engine and handed me the grip and told me to go on home, because it was an awful bad day and maybe they wanted to turn him and a fellow came up at the car. The grip he handed me was a grip like all the engineers have, a little, what you call a hand grip. He carried in his grip his rain coat and his thermos bottle, and his clothes. When he goes to the roundhouse, he changes his clothes to the overalls, and he had his lunch in there, and several little wrenches and stuff that he needs on the engine, little monkey wrenches, or what you call them, for use on the engine."

And further:

"This man who approached us did not leave with him to go to the roundhouse. After Mr. Teague left the car and went across the street and I started my engine up to go on home, he jumped at the car and took the steering wheel, and tried to get the grip away from me; I would not let him have it, because I did not know who he was, and he took a gun out and hit me over the head with the six-shooter, and he shot twice at me."

And further:

"He did not make any request of me before he took hold of the grip; he did not tell me who he was, nor what he wanted. He jumped on the running board and reached over and tried to get the grip out of the car, and I turned around and wanted to hold the grip, and he— I wanted to hold the grip, and he took a six-shooter and hit me over the head with a six-shooter and shot at me over the steering wheel and pushed me all up. The grip was sitting in the car."

After assaulting Mrs. Teague at the depot, McReynolds rode with plaintiffs on their car to their home, holding his pistol on them all the while. In his efforts to get the grip, McReynolds renewed the assault on plaintiff and her husband at their home. Finally he secured two quarts of whisky—appellees said he took it out of a box in the garage, Mc-

Reynolds said he got it out of the grip—and delivered it to his superiors. During the assault McReynolds did not have any warrant of arrest for Henry M. Teague. He did not advise plaintiffs that he was an officer. He did not explain to them why he wanted the grip, and plaintiffs never knew until after it was over that he was a civil officer, and did not know that he was the special officer of appellant until shortly before he left the premises, and practically after the trouble had ceased. McPhail did not deputize either Haughton or McReynolds to assault Teague, nor did he authorize either of them to arrest Teague or to assault him or his wife, or to get possession of the grip, or do anything whatever. In fact, he gave neither of them any orders, nor said anything to them that would authorize them to believe that they had authority to act in his name. In fact, during the trouble plaintiffs thought McReynolds was a thief, trying to steal the grip, and in resisting McReynolds, Mrs. Teague thought she was protecting her husband's grip from a thief. After the assault, the superintendent, Mr. Barry, called Teague into his office. In Mr. Barry's office Teague met McReynolds, Haughton, Johnson, and others, and was asked about the assault and about the grip and its contents. Teague there told the superintendent in McReynolds' presence, the circumstances of the assault. Teague denied to his superiors that he had brought whisky from Louisiana. He continued to perform his duties as engineer for about two weeks, when he was discharged and given a certificate of service, reciting:

" * * * Has been employed in the capacity of engineer at Houston, Texas, in the transportation department of the Texas & New Orleans R. R. from July 13, 1896, to ——, services generally satisfactory. Date of leaving service, and cause: May 15, 1919. Discharged for violation of rules 700, 875 and 881, also failure to observe the regulations requiring him to register at end of run; for alleged irregularities concerning the procuring and handling of intoxicating liquor, and for insubordination developing at investigation.

"Remarks: .......
"[Signed] T. H. Meeks,
"Ass't Superintendent T. & N. O. R. R."

McReynolds was continued in appellant's service.

The law of this case is reflected by the two issues above given submitted by appellant in his brief; for if McReynolds assaulted plaintiff in his capacity as deputy sheriff, appellant would not be liable. But though McReynolds was a duly commissioned deputy sheriff, if he was acting as appellant's agent and servant, trying to get possession of the grip under the order of his superior, when he committed the assault, appellant would be liable. Railway Co. v. Parsons, 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857;

Railway Co. v. Anderson, 82 Tex. 518, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Reed, 80 Tex. 366, 15 S. W. 1105, 26 Am. St. Rep. 749; Dillingham v. Russell, 73 Tex. 47, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Grubb v. Railway Co. (Tex. Civ. App.) 153 S. W. 694; R. C. L. vol. 18, sec. 244, and authorities cited in note, subd. 4.

[2] In determining whether or not the trial court committed error in refusing to give the peremptory instruction appellant says there are four questions to be considered. These questions are as follows:

(1) "Was McReynolds at the time of the alleged assaults performing any service he owed the company or in the discharge of any duties for which he was employed?"

It was McReynolds' duty to investigate and see whether or not there were any infringements of the rules and violations of the law by appellant's employees. It was his duty to make that investigation if he had any knowledge concerning such violations. In this case he had received special information to the effect that Teague was not only violating the rules of appellant, but was also violating the laws of his country. He received special instructions to "ride up" on Teague's engine and "to take that grip if it was taken off that engine." It seems to us that the circumstances of this case raise an issue, not only that McReynolds was investigating the conduct of Teague under his general employment and instructions, but also was trying to carry out the special instructions of his superior. He "rode up" on the engine; he tried to get the grip; he reported to his superiors what he had done—giving his version—and carried them two bottles of whisky. They accepted his report, acted on it, approved it, discharged Teague as a result of his report, and retained him in appellant's service. We believe the issues suggested by question No. 1 was raised by the evidence.

(2) "Does not the evidence conclusively show without dispute that McReynolds at the time of the alleged assaults was acting in conjunction with and assisting one McPhail, a representative of the Department of Justice, to apprehend Engineer Henry Teague, and to arrest and procure from said Teague his grip and to carry him before the federal court for violation of a federal statute in bringing whisky from one state to another?"

McPhail was not present when the assault was made. He did not direct either Haughton or McReynolds to assault plaintiff nor to take the grip, nor to do anything whatever in his name or under color of his authority. He had given them no orders. The conclusion can be drawn from the statement we have made that all McPhail did was to give to Haughton the information contained in this telegram, and that Haughton then volun-

teered his assistance and the assistance of his officers. McReynolds made no report to McPhail of what he had done. He did not tell Teague and his wife that he was acting for McPhail. He had no warrant or color of authority from McPhail or any under the law of Texas. Under the statement of plaintiff, his acts in making the assault were not the acts of an officer, but, as plaintiff saw it, the acts of a robber. Under the evidence, we cannot say that it was clearly shown that McReynolds was acting in conjunction with and assisting McPhail. We believe the evidence clearly raises the issue that he was acting under the employment of appellant, performing the general duties of his employment, and trying to obey the special orders in this case.

(3) "Was the assault, if any, alleged to have been committed by McReynolds, committed while performing an official act in his official capacity and not as an agent or representative of the defendant company?"

Under the analysis we have made of the facts under questions 1 and 2, this question is one of fact and not of law.

(4) "If it be held as a matter of law that McReynolds, as a special agent of the defendant company, had offered to arrest Henry Teague, and in arresting Teague would be performing a service of the defendant company, would the defendant company be liable for any assaults committed upon Mrs. Teague, she having volunteered to prevent McReynolds from performing the service which he originally undertook, namely, the arrest of Henry Teague?"

This question is based on a false premise. On the testimony of plaintiffs, it cannot be said that McReynolds "as a matter of law" offered to arrest Teague. They testified that he attempted to take the grip without request or warning, and that they believed that they were lawfully resisting his efforts. Again, it cannot be said "as a matter of law" that plaintiff "volunteered to prevent McReynolds from performing the service which he had originally undertaken, namely, the arrest of Henry Teague." It was for the jury to say whether he undertook "the arrest of Henry Teague." He, himself, testified that his superior officers ordered him "to take that grip if it was taken off that engine." The evidence in this case is abundantly sufficient to raise the issue that McReynolds was only trying to take the grip, and not to arrest Teague. If he was, then his master was responsible for the manner in which he performed that duty and executed the special orders given him.

We believe the issue of appellant's liability was clearly raised, and that the trial court correctly refused to give a peremptory instruction in his favor.