**GULF, C. & S. F. RY. CO. v. HAMILTON.**

No. 11096.

Court of Civil Appeals of Texas. Dallas.

Jan. 28, 1933.

Rehearing Denied Feb. 25, 1933.

W. P. Donalson, of Dallas, and Terry, Cavin & Mills, of Galveston, for appellant.

Robert H. Jones, Jr., and Hamilton & Hamilton, all of Dallas, for appellee.

JONES, Chief Justice.

In a suit in a county court at law of Dallas county, appellee, W. B. Hamilton, recovered judgment against appellant, Gulf, Colorado & Santa Fé Railway Company, for damages, actual and exemplary, as a result of alleged damages to a shipment of two cars of cattle over appellant's railway from Duncanville, Dallas county, to the stockyards in the city of Fort Worth. An appeal is duly prosecuted to this court, and the following are the facts:

Appellee desired to ship over appellant's railway approximately 68 head of Hereford calves of a very choice grade, to be sold at the Fort Worth stockyards by a commission company. For the purpose of arranging the shipment, appellee interviewed appellant's agent at Cedar Hill, and informed said agent that he wished the stock to go forward in one large stock car, and that he did not want the shipment to be made over any local freight train operating between Dallas and Cleburne, but desired the shipment to go over the through freight train operating between said places, so that a connection would be made with appellant's through train operating be-

tween Cleburne and Fort Worth, in order that his stock would arrive at the stockyards in Fort Worth at approximately 6 or 7 o'clock a. m., allowing them time to rest before they should take their fill, and be fresh in appearance for the opening of the market on the morning of their arrival. Appellee was informed by appellant that a regular schedule through freight train would pass through Duncanville at 9:30 p. m., connect with a through train from Cleburne to Fort Worth, and arrive at the stockyards sometime between 6 and 7 o'clock the following morning, and that he would be furnished the large stock car for his shipment.

Duncanville was equipped by appellant with a stock pen, but had only one chute for loading stock. Appellee knew this, and also knew that, because of the limited facilities at Duncanville, only one car of cattle could be loaded until the train on which the cattle were to be moved arrived, moved the loaded car from the chute, and spotted another car to finish the loading. To prevent the delay incident to such condition, appellee desired to ship his stock in one large car, rather than in two small cars.

On February 24, 1930, appellee was notified by appellant's agent at Cedar Hill that the car wanted would be available that day, for him to have his cattle there in time to be moved at 9:30 p. m., and that the cattle would go forward on the through freight train. Later, appellee's agent was notified by appellant's agent at Cedar Hill that he was unable to furnish the large car, but that he had secured two small cars in which the cattle could be loaded, and that the freight charges would be no higher for the two small cars than for the one large car. Appellee's agent accepted the two small cars, and appellee and his agent had the stock in the stock pen, and the car spotted at the chute was loaded, previous to the scheduled time of the through freight train.

The train to be used in transporting appellee's cattle was late, and did not arrive at Duncanville until approximately 11:15 p. m. The train was stopped before the engine had reached the loaded car in front of the chute, and the conductor in charge of such train walked near to the loaded car, where appellee was waiting, and called to appellee to know if his stock was loaded. Appellee informed him that one car was loaded, but that the other car could not be loaded until the loaded car was moved and the other car spotted, but that this would require less than fifteen minutes. The only reply received by appellee was that, if the cattle were not loaded, he did not have time to fool with them, that they could go on the local train that would follow later, and, signalling his train to move, left without the cattle. Appellee waited some time, then unloaded the cattle from the loaded car into the stock pens, for the reason that more damage would result to cattle in a loaded car standing still than when the car is moving, after which appellee and his agent went home, leaving the stock in the pen. Some time during the early morning of February 25, 1930, the local train came by, loaded appellee's stock into the two cars, and transported them to Cleburne, but arrived at Cleburne too late to connect with the through train from Cleburne to Fort Worth, on which appellee was promised his cattle would move, and hence the cattle did not arrive at Fort Worth until some time after the market was opened, and did not reach the stockyards until about 11:30 a. m. on February 25, 1930.

The evidence discloses that, by reason of the added delay of the cattle in leaving Duncanville, their being moved by a local train, which did switching at intermediate stations, and the added length of time the cattle were in the cars, and because of the lateness of the time in which they arrived at the stockyards, appellee's cattle presented a stale, drawn appearance, and lost in weight, in that they could not take on the fill they would have taken had they arrived under the shipping arrangements contemplated by appellee and promised by appellant. There is evidence that, if the cattle had moved in the manner promised by appellant, and relied upon by appellee, when he placed his cattle in the stock pen, the normal loss of weight would have been from five to fifteen pounds per head; that, moved in the manner appellant did move them, their loss would be from 40 to 50 pounds per head. The evidence discloses that the cattle actually lost about 49 pounds per head in weight.

Appellee instituted this suit against appellant for failure to perform its statutory obligation in transporting his cattle in a manner reasonably safe from damages, and for injuries to the cattle by reason of the failure and refusal to transport them on said through train, after appellant had designated such train for their shipment, and thereby caused appellee to rely upon such designation for making the shipment, and did not bring the suit on any written contract he may have executed at the time the stock was delivered to appellant for shipment.

Appellee also pleaded the facts heretofore stated, as a basis for the charge that appellant was guilty of gross negligence in its failure to ship the cattle on the through train, as contemplated by the parties when the cattle were tendered for shipment, and made this a basis for the prayer for exemplary damages, in addition to the actual damages alleged to have been suffered.

Appellant's theory of the case is that it was not required to move the cattle on any specific train; that the cattle were moved without unreasonable delay or rough handling, reached Fort Worth in time for the market,

and brought the highest price paid for calves on that day. This is set forth in apt pleading, and the assignments of error and propositions of law, relied upon for a reversal of this case, are brought before this court in a proper manner and are supported by able argument of counsel.

The case was tried before a jury, submitted on special issues, and in response to these special issues the jury returned findings favorable to appellee. The findings necessary to a disposition of this case are: (1) Appellant was guilty of negligence in not taking appellee's cattle on the through freight train; (2) as a direct and proximate result of such negligence, appellee's cattle were damaged, (3) in the sum of $186, and (4) in the sum of $12.09, as interest from the date of the shipment, at the rate of 6 per cent. per annum; (6) appellant was guilty of gross negligence in its failure or refusal to transport appellee's cattle on the through train; and (7) the amount of exemplary damages is placed at $51.91; (8) appellant did not fail to exercise ordinary care in transporting appellee's cattle from Duncanville to Fort Worth on the occasion in question; (10) appellant did not transport the cattle from Duncanville to Fort Worth within a reasonable time. The finding of the jury on special issue No. 8 we construe as applying to the manner in which the local train, that carried the cattle, was handled. These findings are supported by evidence, and are adopted as the findings of this court. On such findings the court entered judgment in favor of appellee in the sum of $250, made up of the items of $186 actual damages, $12.09 interest thereon, and $51.91 exemplary damages.

There is presented by appellant's assignments of error a very serious question, which has challenged the careful consideration of this court, and which we will now discuss. Was the trial court in error in submitting the issue of appellant's gross negligence, as a basis for submission of the issue, resulting in the assessment of exemplary damages?

■ The findings of the jury, supported by substantial evidence, determine the fact that the damages to appellee's cattle resulted solely from the refusal of appellant's conductor, in charge of the scheduled through train, to carry the cattle. The jury's finding is that, when the cattle were later loaded and carried on the local train, their transportation was with ordinary care. Appellant's depot agent was informed by appellee, in effect, that, unless his cattle were carried on a through train, they would suffer damages. With this knowledge, the agent designated the through train, and instructed appellee to have his cattle ready to go forward on such train by 9:30 p. m., its scheduled time. Relying upon this promise, appellee drove his cattle into appellant's stock pen in the town of Duncanville; and loaded a portion of them on the one car that was spotted, in ample time for the shipment to be picked up by the through train. Appellant's facilities at Duncanville only permitted one car to be loaded prior to the arrival of the train, and necessarily left the other car to be loaded after such arrival. By reason of such limited facilities, there was necessarily inaugurated the custom that when a shipment of cattle required more than one car, for the train to delay its movement, after arrival at Duncanville, until the loading could be completed, and the cars taken into the train. Appellee knew of this custom, and had the right to rely upon it, and appellant knew that appellee was relying thereon. It was appellant's failure to furnish the promised large car which made necessary a short delay of the through train, in order for appellant to carry out its promise to appellee, and not because of any dereliction on the part of appellee.

■ The duty to transport appellee's cattle in a reasonably safe manner is a statutory duty placed upon appellant, and is nondelegable. It is a duty that appellant must perform through some one in its employ whom it may designate as its alter ego to perform such service. The person thus designated by the public carrier is not a mere employee of such carrier, in respect to the performance of such duty, but is in law the public carrier itself. So, in the instant case, the act of the conductor of the through train, in refusing to incorporate into his train the cars containing appellant's cattle, is the act of appellant. Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S. W. 402; 10 Tex. Jur. §§ 303, 357, 358, and authorities cited in notes to these sections. Appellant's contention that it cannot be held for the gross negligence of an employee in such position is overruled.

■ Appellant further contends that appellee's suit is one on the written contract of shipment, and is not one in any respect sounding in tort, and that exemplary damages are never recoverable on a suit for the breach of contract. If the suit were as contended by appellant, this contention is too broad to state accurately the rule of law obtaining in this state. As stated in Middleton Hooks v. Charles Fitzenrieter, 76 Tex. 277, 13 S. W. 230, a case cited and relied upon by appellant to sustain its contention: "In our state, however, the right to sue for a breach of contract and for a tort, when both grow out of the same transaction, and can be properly litigated together, is recognized." This principle of law has been generally applied in this state. The arbitrary refusal to perform a statutory duty is a tortious act, even though it may also be a breach of contract. The record shows that a written contract for shipment was executed between the parties. The record also shows that appellee did not rely upon the written contract as the basis for his suit, but on the statutory duty of appellant

to transport his cattle. To our minds, however, it is immaterial to the question involved as to whether appellee was suing for a breach of contract or for the breach of a statutory duty placed by law upon appellant. Railroad companies exercise a public employment, imposing upon them duties to the public, which give to every person the right to use their services in the transportation of freight, upon the payment of the requisite consideration. This public duty creates an obligation on the part of railroad companies to perform that duty honestly and faithfully in every case. Gulf, C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 549, 46 Am. Rep. 269.

■ The duty to transport appellee's cattle did not rest alone upon either an express or implied contract, and the office of such a contract in such a case is not the creation of the duty, but only to make it obligatory. The duty of a public carrier in this respect is different from duties created by private contracts between individuals, who otherwise owe no duty to each other, and owe none to the public, in reference to the subject-matter of the contract. Gulf, C. & S. F. Ry. Co. v. Levy, supra.

In the case of Gulf, C. & S. F. Ry. Co. v. Levy, supra, in which exemplary damages were sought, for alleged gross negligence, in failing to deliver a death message, the Supreme Court, speaking through Judge Stayton, made the following observation as against a similar contention made in the instant case: "Upon the whole case, as made by the petition and evidence, we are of the opinion that the appellee was entitled to recover whatever damage the proof may justify, over and above such sum as he paid for the transmission of the message; and this in the way of exemplary damages, if the negligence of the appellant, in failing to deliver the message, was wilful or gross, which is a matter to be determined by a jury, under proper instructions."

■ We are therefore of the conclusion that, if the breach, either of the statutory duty of a public carrier to transport freight, or the breach of a written contract for such purpose, is attended by circumstances that warrant a jury in finding such carrier guilty of gross negligence, our courts permit the assessment of exemplary damages. 10 C. J. p. 315, § 455, states the general rule of law in reference to the right to exemplary damages in the character of case under review, as favorable to appellant, we think, as can be stated in general language. The rule is thus announced: "Exemplary or punitive damages are not recoverable for unreasonable delay in transportation, unless such delay was due to gross negligence or oppression, or to a willful, conscious, or wanton disregard of the shipper's rights. But where the carrier's conduct in delaying the shipments showed a reck-

less and wanton disregard of the shipper's rights, punitive damages have been allowed."

■ In the instant case, appellee's right to exemplary damages cannot be based primarily upon the delay occasioned by appellant's refusal to ship the cattle on the through train, but must be based upon the fact that appellant was guilty of gross negligence when it refused to carry the cattle on said through train.

■ Does the evidence in the instant case raise the issue of gross negligence? We think so. This evidence establishes the fact that appellee stated to appellant's agent at Cedar Hill that he did not want his cattle shipped on a local train, and gave the reason therefor; that the agent told appellee to have his cattle in appellant's stock pens at Duncanville before 9:30 p. m. on February 24, 1930, when the cattle would be moved forward on the through freight train. Appellee had his cattle in the stock pens within the designated time, and did all that, under the existing conditions, he could do in preparing them for shipment. This was done on appellee's belief in, and reliance upon, the statement and unconditional promise of appellant's agent that the cattle would be moved on the through train. Under the circumstances, the duty rested on appellant to carry the cattle on said through train. This plain duty appellant refused to perform, for the sole reason that the conductor did not "have time to fool with them." Such refusal was arbitrary on the part of the conductor, and, as a result, appellee suffered actual damages, as found by the jury, in the sum of $186. Appellant knew that damages would result if the cattle were not carried on the through train.

Gross negligence is defined by our Supreme Court in the case of International & G. N. Ry. Co. v. Cocke, 64 Tex. 151, to be "an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the interest and welfare of others."

We are of the opinion that the evidence, as to the acts of the conductor in charge of the through train, on the occasion in question, is open to the charge that he acted with entire indifference to the interest of appellee, and hence is sufficient to raise the issue of fact as to appellant's being guilty of gross negligence. Gulf, C. & S. F. Ry. Co. v. Levy, supra; Chronister Lumber Co. v. Williams, supra; Gulf, C. & S. F. Ry. Co. v. Reed, 80 Tex. 362, 15 S. W. 1105, 26 Am. St. Rep. 749; 10 C. J. supra.

There are a number of other assignments of error which have been carefully considered, with the result that we do not believe that any of them present reversible error. It becomes our duty, therefore, to affirm the judgment of the lower court, and it is so ordered.

Affirmed.

On Motion for Rehearing.

In its motion for rehearing, appellant complains that we misconstrued the answer of the jury to special issue No. 10. Such issue and answer of the jury thereto reads: "Do you find from a preponderance of the evidence that defendant did not transport plaintiff's cattle from Duncanville, Texas, to Fort Worth, Texas, within a reasonable time? Answer 'yes' or 'no.' Answer: 'No.'"

In stating the findings of the jury, the original opinion stated the finding, in response to special issue No. 10, to be that: "Appellant did not transport the cattle from Duncanville to Fort Worth within a reasonable time." Appellant construes this finding to be that appellant did transport the cattle from Duncanville to Fort Worth within a reasonable time.

While we are not free from doubt as to the construction of this finding, in view of appellant's contention in reference thereto, and because of the doubtful meaning of the jury's answer, we change our original finding and make the finding as requested by appellant.

However, the finding on special issue No. 10, as well as on special issue No. 8, is rendered immaterial by reason of the findings of the jury on the preceding issues submitted by the court, on which findings the judgment of the trial court is based. The motion for rehearing is overruled.

Overruled.