GEORGE GOEBEL et al., Plaintiffs in Error v. GEORGE FLEMING, Defendant in Error.

Middle Section.  January 17, 1931.

Petition for Certiorari denied by Supreme Court, July 1, 1931.

McGugin & Evans, of Nashville, for plaintiffs in error.
Goodpasture & Carpenter, of Nashville, for defendant in error.

DeWITT, J. George Fleming (herein, for convenience, called the plaintiff) obtained in this cause a judgment against George Geobel, Mrs. George Goebel and their daughter, Miss Marjorie Goebel (herein called the defendants) for $7500 for personal injuries incurred by plaintiff on the night of June 11, 1929. Plaintiff was riding a bay horse from the home of his employer, Dr. A. L. Sharber, westwardly along the Harding Road, toward plaintiff's home. At a point in front of the Sudekum residence, the defendants George Goebel and Miss Marjorie Goebel came along in the same direction from the rear in an automobile belonging to Mrs. George Goebel and driven by Miss Marjorie Goebel, and the automobile struck the horse, injuring him so that he had to be killed; and throwing the plaintiff seven or eight feet on to a graveled portion of the highway, seriously injuring him. At that place the highway was divided into two parts, the asphalt surface, 22 feet wide, being on the left side as they were going, and a graveled portion on the other side, with a street car track running along to the right of this graveled portion, which was 13 feet 5 inches wide.

In the declaration it was alleged that Miss Goebel "was operating the automobile at a fast rate of speed in a negligent, careless and unlawful manner, with a total and absolute disregard for the rights of others, and particularly the plaintiff" . . . and, further, as follows:

"The Harding Road at this point has a concrete surface about twenty (20) feet or more in width, and on the right, or northwesterly side thereof there is a gravel and rock portion of about fifteen (15) feet in width. The plaintiff was riding the horse of his employer, also traveling a southwesterly direction, along this graveled portion of the road, where he had a right to be, being clear off the asphalt part when the defendant, Miss Marjorie Goebel, accompanied by her father and chauffeuring for him and for defendant Mrs. George Goebel in the aforesaid automobile, while the plaintiff and his horse were thus in plain view of them, did at an excessive, negligent and high rate of speed run off of the asphalt road over into the gravel part, where they had no right to be and with great force crushed down upon and into the said horse and the plaintiff, who was riding thereon, violently knocking, dragging and pushing them over the gravel and sharp stoney surfaced

part of the road, hurling the plaintiff from his horse and dashing him upon the rough rock and sharp stone.''

Thus it was alleged that the plaintiff, when injured, was riding the horse along the graveled portion of the road and clear off the asphalt part, and the defendant's car ran off the asphalt road over into the graveled part, where the collision occurred. Upon the trial much evidence was introduced tending to show that plaintiff was riding on the asphalt part. After the charge was given to the jury, counsel for the defendants requested the court to instruct the jury that they should find for the defendants if they should not find that at and before the time of the accident the plaintiff was riding the horse along the graveled portion of Harding Road, and that defendants' automobile was run off the asphalt road on to the graveled part of the road. The Court refused this request. The jury retired to consider of their verdict. Then the Trial Judge announced that he was considering recalling the jury to give to them the said instruction; whereupon counsel for plaintiff moved for permission to amend the declaration so as to make it read as follows:

''Plaintiff was riding the horse on the right hand side of the asphalt, or along the graveled portion of the road being to the right of the asphalt or clear off the asphalt part of the road.''

The amendment was allowed and was read to the jury, upon recall, over the objection of the defendants. Defendants renewed their said request, and it was refused. It is insisted here that it was error on the part of the Trial Judge thus to permit the plaintiff to amend his declaration; that without this amendment there was a fatal variance between the declaration and the evidence; that the Trial Judge erroneously instructed the jury as to the effect of negligence, if any, or want of negligence, if any, of the driver of the automobile with reference to the plaintiff if it should be found that when struck he was riding upon the asphalt part of the road.

In our opinion, it was not an abuse of the discretion of the Trial Judge to allow the amendment to be made to the declaration. In Railroad v. Brown, 125 Tenn., 351, 143 S. W., 1129, the rules are summarized as follows:

''Amendments are liberally allowed to meet the ends of justice. It is provided by Code, section 2863 (Shannon's Ed., sec. 4583), that no writ, pleading, process, return, or other proceeding in any civil action in any court shall be abated or quashed for any defect, omission, or imperfection, and by section 2867 (Shannon's Ed., section 4587) that the court may allow material amendments at any stage of the proceeding, upon such terms and subject to such rules as it may prescribe.''

In Tire & Oil Co. v. Mallory, 2 Tenn. App., 101, it was held that it was proper, during the trial, to allow the plaintiff to amend his declaration by striking out an averment that the boy, when struck by a truck of the defendant, was riding on the sidewalk. Judge Owen, for the Court, made the following apt observations:

"We realize that attorneys, often in the practice of law and in the drafting of declarations, are not in possession of the full facts, and facts which are developed by trial in the testimony make it incumbent upon the plaintiff to amend his declaration in order to make it conform to the proof."

The declaration, as thus amended, did not contain statements that were so repugnant to and inconsistent with each other as to neutralize each other and render the pleading defective. These statements related only to the place of the collision. The charge was in the alternative—that the collision occurred on the asphalt roadway or on the graveled portion. The cause of action was not stated in the alternative. Each of these alternatives stated presented a good cause of action. Each was pertinent to the single cause of action. They were therefore not objectionable. 49 C. J., 98, note 80 (d) and cases cited.

It is insisted that there is no evidence to sustain the verdict and that the motion made by defendants, at the close of all the evidence, should have been sustained. The same test of the evidence is applicable to both propositions.

There was much testimony, introduced by the defendants, that the collision occurred on the asphalt roadway, the part customarily used for automobiles; but the plaintiff testified that he was riding to the right of it, on the graveled portion, when he was struck. If this was true, necessarily the defendants' car was run off the asphalt portion; so that, there was material evidence to sustain this charge, which, taken with the charge that the car was being operated "at an excessive, negligent and high rate of speed," constituted in the declaration, a charge of actionable negligence. The declaration as amended covered also the negligence of running at such rate of speed on the asphalt roadway and striking plaintiff's horse and injuring plaintiff, he and his horse having been in plain view just before the collision. This also would be actionable negligence. The declaration also contained the charge that Miss Goebel "was operating the aforesaid automobile at a fast rate of speed in a negligent, careless and unlawful manner, with a total and absolute disregard for the rights of others."

It is therefore not a case for the application of the rule that where the injury upon which the suit is based is alleged to have been the result of several acts of negligence, no one of which is charged to have alone caused the accident, proof of one of the acts will not suffice, but all must be proven to obtain a recovery.

It is undisputed that the night was dark and it was raining; that the collision occurred about eight o'clock; that the horse was first seen by the occupants of the automobile when he was about ten to fifteen feet ahead; that the car had four-wheel brakes in good condition and lights enabling the driver to see at least one hundred feet ahead. The horse was of a medium bay color. The asphalt surface was very dark. The plaintiff had a flashlight, but it had gone out at Wilson's switch, several hundred yards behind, and would not burn. The defendants Mr. and Miss Goebel and another witness testified that when the horse was discovered, the brakes were immediately applied, the car skidded to the left, turned around and struck the horse. The horse's left leg was broken so that the bone protruded through the flesh. The horse fell on the front of the car and then off. The right head light of the car was mashed back, and the right front fender was bent. The gravel between the asphalt and the car track was disturbed and at that place there was blood. Of course, these marks may have been made after the horse was struck on the asphalt roadway and rolled over on the ground.

There is testimony that the car was running at the rate of thirty to thirty-five miles an hour. A negro named Mayo Turner who knew the plaintiff (who is also a negro) testified that just before the accident he was a passenger on the left hand side of a street car going west, which car was standing at Wilson switch; that he saw the plaintiff going by riding the horse; that he then saw a La Salle automobile go by in the same direction at the rate of about thirty to thirty-five miles an hour; that it was running partly on the asphalt and partly on the gravel; that shortly thereafter he saw the horse walking on three legs; that the street car went on and came to a place where three men were holding the plaintiff up; that there he saw a La Salle car standing, of the same description, with two wheels on the gravel. Mr. Goebel testified that the automobile ran at the rate of twenty to twenty-five miles an hour from Wilson switch to the place of the accident. If the jury believed that the car was running at thirty to thirty-five miles an hour at Wilson switch, they would reasonably infer that it was running that fast to the time of the collision. They also were warranted in considering the violence of the impact and the distance the plaintiff was thrown in determining whether or not the car was being driven at an excessive rate of speed under the circumstances. The questions of negligence of the driver and contributory negligence of the plaintiff were for the jury to decide, and there was material evidence to support their conclusions.

The jury were instructed that it was the duty of Miss Goebel to have the car under reasonable control and to look ahead for persons and objects upon the highway. The violation of such duties was

necessarily involved in the charge that she drove the automobile "at an excessive, negligent and high rate of speed . . . and with great force crushed down upon and into the said horse and the plaintiff." The instruction as to failure to look ahead did not, therefore, relate to any act of negligence not charged in the declaration.

When the jury took the case under consideration they had before them the amended declaration, so that they might consider whether the collision occurred on or off the asphalt roadway. Consequently, the references in the charge of the Trial Judge by hypotheses to the plaintiff being upon the asphalt roadway at the time of the collision were pertinent and not beyond the scope of the pleadings.

Complainant is made of the following portion of the instructions given:

"On the contrary, if you should find from the evidence that at the time of the accident the plaintiff, George Fleming, was riding upon the asphalt part of the road and if you should further find that Miss Marjorie Goebel was in the exercise of ordinary care and prudence looking ahead at the time, and that the accident was not proximately caused by her negligence or failure to use due care, then there can be no recovery, and it would be your duty to return a verdict against the plaintiff and in favor of all three of the defendants."

The first objection is that this instruction authorized the jury to fix liability upon the defendants upon a state of facts entirely inconsistent with those alleged in the declaration. This has been answered and overruled in the discussion just preceding.

The second objection is that this instruction omits the proposition that if the plaintiff was guilty of negligence in riding upon the asphalt part of the road and this was a directly contributing cause of the collision, the plaintiff should not recover, because of his contributory negligence.

The Trial Judge, in another part of his charge, correctly defined proximate cause as the act or omission preceding the accident, without which the injury would not have been inflicted. He told the jury that if the plaintiff should be the guilty party (that is, as he said, the party guilty of the act or omission proximately causing the injury), then 'the defendants would not be liable for the injury. Now, it is necessary in this connection to treat the complaint made that the Trial Judge invaded the province of the jury by instructing the jury as follows (the part objected to being here italicized):

"I further charge you that if you should find from the evidence that the plaintiff knew that the asphalt part of the Harding Road was being constantly used by automobiles and that on the night of the accident it was being so used, and that the

plaintiff elected to ride and did ride upon the asphalt part of the road, *while his said act in and of itself would not be an act of negligence,* yet if you find that the plaintiff failed to exercise that degree of care demanded of him under such circumstances and such failure contributed in any degree to the accident as the proximate cause thereof, then it would be your duty to find against the plaintiff and in favor of the defendants.''

But His Honor also upon request gave the following instructions to the jury:

''While ordinarily a person has a legal right to ride a horse on any part of the right hand side of any public highway, still it may be negligence to claim and exercise a legal right, if under all the facts and circumstances then existent an ordinarily prudent person would not so claim and use said right. So that, while ordinarily the plaintiff had the right to ride a horse upon the right hand side of the hard or asphalt surface of Harding Road, still if he was doing so, and if you find from a preponderance of the evidence that to do so under the circumstances then existing, such as that, if you so find, it was dark, the highway was wet and slick, there were many automobiles passing both ways, he was carrying no light, his horse was of medium or dark bay color which would blend with the color of the road in the rays of an automobile light, the plaintiff himself was dark, the plaintiff knew that it might be dangerous to ride at said place, at said time and under said circumstances, and there was a graveled or dirt road space ordinarily used by people on horseback and which plaintiff hight have used, was negligence, that is, that it would not have been done by a person of ordinary care and prudence, under such facts and circumstances, then plaintiff cannot recover and your verdict should be for the defendants. And I have added this provision, 'provided you find it was the proximate cause of the accident, or contributed to it in any degree as the proximate cause thereof.''

The instructions thus given as requested were correct. What the Trial Judge said, as above quoted, in his original charge was merely that the plaintiff's act in riding on the asphalt roadway would not in itself, that is, apart from other circumstances, be an act of negligence. It was a public road and he had a right to ride on it. Then in further giving the instructions upon this subject as requested, he dealt with the effect of the plaintiff's act in connection with all the circumstances, so that the jury were clearly, fully and correctly instructed upon the subject of contributory negligence; and there was no invasion of the province of the jury.

It is insisted that the Trial Judge erroneously refused to charge the jury according to six requests submitted in behalf of the defendants.

Requests numbers 1, and 2 were substantially included in the instructions actually given, especially in request number 5, which was granted and given to the jury.

Requests numbers 6, 7 and 8 purported to limit any right of recovery to a finding that at the time of the injury the plaintiff was riding the horse on the graveled portion of the roadway. The allowance of the amendment alone made these requests improper. Furthermore, request 6 was erroneous in that it excluded any negligence of the occurants of the automobile in failing earlier to see the horse and preparing to avoid striking him.

Request number 9 was also fully covered in the instructions actually given.

Complaint is made of the admission of certain testimony. The plaintiff testified that for three or four weeks while he was in a hospital he thought he was going to die. It is insisted that his account of a mere apprehension which was not fulfilled is the expression of an opinion which is speculative and conjectural. It was admitted as evidence of suffering due to the injuries. Of course, an apprehension of death is an indication of mental anguish. It is clearly inferable that it was due to physicial disorder resulting from the injuries. It is well settled that damages may be allowed as compensatory for mental anguish so resulting. Wadsworth v. Telegraph Company, 86 Tenn., 695. An analogous case is Britt v. Carolina Northern R. Co., 148 N. C., 37, 61 S. E., 601, in which it was held (the action being for personal injuries) that the plaintiff was properly permitted to state as a part of his mental suffering that "he knew he could never be well again, and that it almost broke his heart to know that he would be a cripple for life," this being a part of the suffering like the physical suffering.

The plaintiff stood before the Court and jury as a plain, ordinary human being, without evidence of any peculiar temperament. It was therefore no violation of the rules of evidence to permit him thus to disclose his subjective state as tending to show his mental suffering coupled with his bodily injuries.

Dr. R. N. Herbert testified that in his opinion the plaintiff would never be able to work satisfactorily at his previous occupation of farm laborer, so that he could make a living at it. The witness, a skillful physician and surgeon, had made several examinations of the plaintiff at the hospital. He described minutely his physical condition. He was of the opinion that his injuries were permanent. He was then asked and answered:

"Q. What incapacity in your opinion will George suffer on account of these injuries; by that, I mean what he can do

physically and what he cannot do? A. An individual of his age, we don't get the reconstructive powers that we would in a younger individual, and when he has had some of his guy ropes broken or cut, or mashed, I would think he would more or less from now on have pain and discomfort in lifting and working at most any gainful occupation."

It was after this testimony was given that he gave the opinion testimony that was objected to. It is well settled that testimony of a physician as to the probable effect of the injury is admissible, but it should show that such result is reasonably certain and not a mere likelihood, and must be confined to the particular injury in question. 17 C. J., 1035. The evidence here objected to bore upon the question of impairment of the plaintiff's earning capacity. It was not directed to any particular pecuniary amount of impairment, but to inability, due to physical impairment, to earn as much as theretofore. It was, after all, a mere statement that the plaintiff was physically impaired. The evidence was undisputed that his earning a living depended upon his physical labor. It was not necessary for the witness to be familiar with plaintiff's actual previous earning capacity. It was proper for him to be permitted to testify upon this subject by this mere comparison based upon physical impairment. Farm labor was plaintiff's principal occupation. The testimony bore directly upon his ability thereafter to perform such labor.

Dr. A. L. Sharber, a skilled witness, testified that he thought, during the first and second times that plaintiff was in the hospital, that he would not recover. He attended plaintiff as physician and surgeon. This expert testimony was admissible as bearing upon the extent of the plaintiff's injuries, his pain and suffering. It is true that plaintiff did not die, but, of course, that fact was before the jury.

Dr. Sharber was also the plaintiff's employer. He testified that plaintiff, at the time of the trial, had no means of support. This testimony merely tended to show that plaintiff's earning capacity had been destroyed. It was properly admitted.

The Trial Judge sustained objections of plaintiff's counsel to questions propounded to plaintiff on cross examination seeking to show by his admissions that he knew that the asphalt surface of the roadway was of a dark color that would blend with the color of the horse, and that therefore he was negligent in riding on the asphalt surface and exposing himself to danger. The question is made that the exclusion of these questions and answers violated the rule that evidence of knowledge of a defect or danger on the part of the plaintiff is admissible as bearing on his exercise of due care. In our opinion if this evidence was admissible the exclusion of it would not

be reversible error. The plaintiff testified that he was riding along the graveled portion of the roadway. He also testified that the asphalt surface was a kind of light grey in color; that he did not think that there would be a blend of color between the asphalt surface and the horse, as the horse was a dark bay in color. The court excluded all this evidence as immaterial but it had been set forth to the jury. There was nothing substantial in it and it bore so remotely upon the question of plaintiff's knowledge of danger that it was really immaterial.

It is earnestly insisted that the jury was actuated by passion, prejudice or caprice, as shown by the verdict and judgment. The jury returned a verdict for $9000 in favor of the plaintiff, but this was reduced to $7500 by remittitur and no complaint is made in this Court of this reduction. The plaintiff was fifty-eight years old at the time of the accident. He was living near Belle Meade on a small farm. He did yard work, house work, and attended to chickens and horses. He had been working for Doctor Sharber for about four years. He was paid $8 a week, ate his meals at Doctor Sharber's and sometimes spent the night there; and in addition he was given free rent of the small place where he lived and which belonged to Doctor Sharber. He attended to Doctor Sharber's furnace, waited on the table, did house work, mowed the lawn, attended to the horses, cultivated the garden, plowing with a horse and hoeing it. Dr. Sharber estimated that he was earning altogether about $60 per month in money and other benefits. His expectancy of life was a fraction over fifteen years.

Prior to the accident he had myocarditis, or inflammation of heart muscles, and a duodenal ulcer. These troubles were made somewhat worse by the injuries by lessening of the power of resistance. The injuries were of a very painful and debilitating character. The plaintiff was in a hospital twice, each time for a long period. He endured intense suffering from the date of the accident, in June, until September. His first period in the hospital was five weeks, his second, three weeks—the latter being in December. His injuries were permanent, but this will be hereinafter discussed.

By the collision the plaintiff was knocked violently over on the graveled part of the highway. He was for a while unconscious. His worst injuries were a fracture of a rib, fracture of the left transverse process of the fifth lumbar vertebra, together with injuries to the ligaments, nerves and muscles which surround these bones; also a hematoma, or large blood tumor, which formed between his shoulder blade and pelvis, which finally was superseded by scar tissue rendering the ligaments and muscles almost useless. There was also considerable atrophy, or shrinkage, of the back, which made it impossible for him to bend or use his back without pain.

A urinalysis showed that there was an injury to his kidneys. His back was rendered stiff and it is a permanent disability. He is permanently disabled by the injuries to perform very much of the labor for which he had been employed and upon which he depended for his living. At the time of the trial, March, 1930, his back was continually in pain, he had spells of fainting, swelling of the feet and legs, dizziness, and was unable to take exercise without pain and difficulty. He had been unable to earn anything, and it is clear from the evidence to which we must look, that his earning capacity is very seriously impaired if not destroyed. Before the accident he was in sufficient health to work without the loss of a day for four years. He ate what he wanted, but now must watch his diet. He weighed 165 pounds, but was reduced to 115 pounds, though he had gained back to 144 pounds at the time of the trial.

The plaintiff was attended, or examined repeatedly, by five very skillful physicians and surgeons, four of whom testified and very fully. There is evidence that the plaintiff will suffer pain and discomfort in working at whatever gainful occupation in which he could engage; but that he could do light work or any work in which he could remain in an upright position, such as housework not requiring stooping or driving a horse to operate a mower.

An analysis made by counsel for the defendants is as follows:

"From the foregoing it is very obvious that the suffering which plaintiff has endured has been due to four sources: (1) The myocarditis clearly found by Drs. Tigert and Davis, not denied by either of the other doctors, and shown by these witnesses to have been a condition existing prior to the accident and to which the accident was probably an aggravating or contributory cause but no more; (2) kidney condition in all probability existing prior to the accident and, as Dr. Tigert and Dr. Davis testified, precipitated by the accident; (3) duodenal ulcer in no way attributable to the accident; (4) injuries resulting from the accident."

Taking the most favorable view of the evidence to the plaintiff, this analysis is, in our opinion, substantially correct, except that probably the lessening of power of resistance affected also the ulcerated condition.

The plaintiff incurred liability for X-ray and hospital services to the extent of $103, and Dr. Sharber testified that his charge for his services would be $500.

For these sufferings, injuries and expenses the plaintiff has been awarded $7500. There is no rule of law regulating the assessment of such damages. No exact standard can be prescribed by which the compensation to be awarded for such injuries can be measured. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a

just pecuniary compensation. Saucier v. Roberts, 2 Tenn. App., 211. Attributing the verdict of the jury to a conclusion that plaintiff was riding on the graveled roadway when injured, we do not find that he was guilty of negligence, either proximate or remote.

The plaintiff's expectancy of life and his future ability to earn a living were affected by his affliction with myocarditis, duodenal ulcer and some rheumatism. He vomited blood, due to the ulcer; had swelling of the feet and legs, due to the inflammation of heart muscles; and had some inconvenience from rheumatism, due to infection, in the blood. These causes and effects were described by the physicians. The injuries contributed to make them worse to some degree incapable of exact estimation.

In Elrod v. Franklin, 140 Tenn., 228, 204 S. W., 298, it was ruled that in such a case the recovery is, not limited to the results of the actual injuries sustained without regard to the condition at the time the person was injured; but that the wrongdoer is responsible for all ill effects which naturally and necessarily follow the injury in the condition of health in which the injured person was at the time of the injury, and it is no defense that the injury might have been aggravated and rendered more difficult to cure by reason of the person's state of health at that time, or that by reason of latent disease the injuries were rendered more serious than they would have been to a person in robust health. Under this rule the contribution of the injuries to the aggravation of the diseases was an element of damage, although those ailments affected the question of longevity.

In Railroad v. Roddy, 85 Tenn., 400, 5 S. W., 286, the rule of the common law, applied in many prior Tennessee cases, was declared, "that in actions for damages for personal torts it is within the strict province of the jury to estimate the extent of the injury and assess the damage, and that unless there is a manifest abuse of this trust, such as to indicate passion, prejudice, partiality, or unaccountable caprice or corruption, the trial judge ought not to interfere."

This case does not consider the question of remittitur at all, but deals with the duty of the court as to setting aside verdicts in toto. Grant v. Railroad, 129 Tenn., 398, 165 S. W., 963. However, the foregoing rule of the Roddy case has been extensively applied in affirming judgments for unliquidated damages. In Grant v. Railroad, supra, it was ruled that the power of the trial court to suggest a remittitur, in such a case, may be exercised where the verdict is merely excessive, and is not limited to cases where passion, prejudice or caprice on the part of the jury appears. In the case of Railroad v. Roberts, 113 Tenn., 488, 82 S. W., 314, 67 L. R. A., 495, 3 Ann. Cas., 937, was announced the adoption of the practice of suggesting remittiturs in the appellate courts and thus curing

excessive verdicts in the same manner as trial courts do. It would therefore be within the power of this court to suggest a further remittitur on the ground of excessiveness.

We do not interpret the record before us as indicating passion, prejudice or caprice on the part of the jury, unless it is reflected in the size of the verdict. The award of $9000 was manifestly excessive, but it was reduced to $7500 by the remittitur. This judgment itself is large and generous, but considering all the facts which have been heretofore set forth, we do not feel justified in substituting a different judgment for that of the Circuit Judge and the jury. Saucier v. Roberts, supra; Baker v. Bates, 4 Higgins, 175. The judgment is not so manifestly excessive as to warrant the suggestion of a further remittitur.

It results that the assignments of error are overruled and the judgment of the Circuit Court is affirmed. Judgment will be entered in this Court in favor of the defendant in error against the plaintiffs in error for the sum of $7,500, with interest from the date of the judgment in the Circuit Court, and all the costs of this cause. The costs of the appeal in error will also be adjudged against the surety on the appeal bond.

Crownover, J., and Higgins, Sp. J., concur.